UNITED STATES *v.* KLINGERIT, INC. (No. 3264)[1]

[1] T. D. 43931.

United States Court of Customs and Patent Appeals, March 19, 1930

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler* and *Oscar Igstaedter*, special attorneys, of counsel), for the United States.
*Allan R. Brown* for appellee.

[Oral argument February 12, 1930, by Mr. Igstaedter and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The merchandise involved in this case consists of metal valves claimed to be of a specialized and somewhat complicated form.

They were classified and assessed for duty by the collector at 40 per centum ad valorem under paragraph 399 of the Tariff Act of 1922 as manufactures of metal not specially provided for.

Importer protested this classification, insisting that they should be classified under paragraph 372 of the said act as machines not specially provided for, and assessed at 30 per centum ad valorem.

The protest was sustained by the Customs Court and the Government appeals to this court.

The pertinent portions of the respective paragraphs read as follows:

PAR. 399. Articles or wares not specially provided for * * *; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum or other metal, but not plated with platinum * * *, whether partly or wholly manufactured, 40 per centum ad valorem.

PAR. 372. Steam engines and steam locomotives, * * * sewing machines * * * cash registers * * * printing presses * * * machine tools and parts of machine tools * * * embroidery machines * * * all other textile machinery * * * cream separators * * * combined adding and typewriting machines * * * all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem.

The question for determination is whether the valves in issue are machines in the meaning of paragraph 372 of the act, the importer's claim being limited to "machines not specially provided for."

Testimony was taken in the case by both parties as to the character, operation, function, and all the general and specific characteristics of the mechanism, and illustrative exhibits were filed as a part of the record.

It appears to be a device for use in regulating the quantity of steam, gas, oil, water, or other liquids which may flow through it. It is operated by hand; that is to say, the valve is closed by turning a wheel at its top to the right by hand power, and opened to the extent desired by turning the wheel to the left. It has other features rendering it more complicated than many classes of valves, but has no automatic feature.

The Century Dictionary and Cyclopedia defines valve to be:

Any device or appliance used to control the flow of a liquid, vapor, or gas, or loose material in bulk through a pipe passageway, outlet, or inlet in any form of containing vessel. In this wide and general sense the term includes air-, gas-, steam-, and watercocks of any kind, water gates, air gates, and keys to musical wind instruments.

Knight's New Mechanical Dictionary (supplement) defines a valve to be:

A device for regulating the passage of a fluid through a pipe or aperture.

Other definitions are consistent with those quoted.

We think there can be no question but that the involved devices meet the terms of these definitions and that they are valves.

But it is insisted that although they may be valves in the common meaning of that word, they are also machines in the sense of paragraph 372.

In the case of *Simon, Buhler & Baumann (Inc.)* v. *United States,* 8 Ct. Cust. Appls. 273, T. D. 37537, this court gave a definition of machine which we have since consistently followed and applied:

A mechanical contrivance for utilizing, applying or modifying energy or force or for the transmission of motion.

Appellee argues that the valves in issue come within the terms of this definition.

The court below made no reference to the *Simon, Buhler* case, but sustained the protest upon the authority of its own prior decisions upon merchandise stated to have been similar to that involved in this case.

While it is doubtless true that the valves are of a more complicated structure than many other classes of valves, we, nevertheless, are unable to find in the record any attributes or qualities which seem to bring them within the machine definition pronounced by this court as quoted *supra.*

It does not seem to us that they can be correctly said to utilize, apply, or modify energy or force, or that they transmit motion.

The valves do not function in the development of the energy or force inherent in the element which passes through them, nor in the development of the element itself. They do not of themselves apply that force to the object upon which it operates. Through the manip-

ulation by hand means of the proper instrumentality, the valves do regulate the quantity of the element which contains the energy, but this regulation of quantity is not synonymous with modification of the force or energy, in the sense that the word "modify" is applicable in the machine definition quoted.

In *United States* v. *J. Reid & Co. (Inc.)*, 17 C. C. P. A. 253, T. D. 43675, discussing what constitutes centrifugal machines, Presiding Judge Graham, speaking for this court, said:

* * * it is plain that to constitute a centrifugal machine, the machine itself or some portion thereof must so move as to produce the desired results by centrifugal force. If the material to be operated upon moves by its own force, we can not conceive such a result to be produced by a centrifugal machine. In the case before us here, the device in question is, in our judgment, no more a centrifugal machine than the worm of a still would be.

The reasoning of that case we think applies in the case at bar.

We are therefore of the opinion that the Customs Court erred in its conclusion and its judgment is *reversed*.