UNITED STATES *v.* WM. GOLDENBLUM & Co. (No. 3336)[1]

UNITED STATES *v.* PECK MACK CO.

[1] T. D. 44616.

United States Court of Customs and Patent Appeals, January 28, 1931

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Allan R. Brown* for appellees.

[Oral argument December 12, 1930, by Mr. Folks and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Merchandise, consisting of carpenters' braces in chief value of metal, some with, and some without, ratchet attachments, was assessed for duty by the collector at the port of New York as manufactures of metal, not specially provided for, at 40 per centum ad valorem under paragraph 399 of the Tariff Act of 1922.

PAR. 399. Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 60 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 40 per centum ad valorem.

The importers protested, claiming that the braces were properly dutiable under the provision for all other machines or parts thereof, not specially provided for, at 30 per centum ad valorem under paragraph 372, the pertinent part of which reads as follows:

PAR. 372. Steam engines and steam locomotives * * * sewing machines. * * * cash registers * * * printing presses * * * lawn mowers, and machine tools and parts of machine tools, * * * embroidery machines, lace-making machines * * * knitting, braiding, lace braiding, and insulating machines, and all other similar textile machinery or parts thereof * * * cream separators * * * and other centrifugal machines for the separation of liquids. * * * combined adding and typewriting machines * * *; all other machines. or parts thereof, finished or unfinished, not specially provided for, 30 per centum. ad valorem; *Provided*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

A carpenter's brace is used for turning boring bits or drills, and consists of a crank-formed shaft—"sweep"—with jaws at one end for holding a bit or drill, and a swiveled head at the other end, by which the brace and, consequently, bit or drill is pressed forward by the operator, who, by turning the crank-formed shaft—"sweep"—with his hand, imparts a rotating motion to the bit or drill.

The imported articles may be used for boring holes in metal or wood, and are always operated by hand power.

By means of the ratchet attachment, the bit or drill, when desired, is turned in one direction only, so that, when the operator reverses the motion of the crank-formed shaft, the bit or drill does not change position. Accordingly, by means of this attachment, the operator may handle the brace in a very limited space.

But one witness, David Donaldson, manager of Wm. Goldenblum & Co., one of the appellants, testified for the importers. After describing the articles in question and identifying Exhibit 1 as representative of the rachet braces, and illustrative Exhibit A as a bit or stock drill designed to be used in connection with the braces, he said:

Q. Does the Exhibit 1 serve any purpose besides holding illustrative Exhibit A in place?—A. It gives it a firm grip—holds it in the brace—good, solid grip.

The witness also said that the imported articles, due to leverage, gave the operator of them more power.

The witnesses for the Government testified that the imported article were known as carpenters'. tools, and that they had never heard of them being called machines.

Upon this record the court below held that the articles were machines and dutiable as such under paragraph 372.

It is claimed by counsel for the Government that the imported articles are carpenters' hand-tools, not machines; that, as paragraph 372 provides for machine tools and parts thereof, and, as the *proviso* in said paragraph limits the provision for machine tools to "any machine operating other than by hand power, which employs a tool for work on metal," the involved articles are expressly excluded from that paragraph.

Counsel for appellees contend that the articles in question come squarely within the definition of a machine, announced by this court in the case of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, wherein it was said in substance that a machine is a mechanical contrivance for utilizing, applying, or modifying energy or force, or for the transmission of motion. It is conceded by counsel for appellees that the articles are tools. It is argued, however, that they are also machines, and that, as there is no provision in the Tariff Act of 1922 for tools of this character, they are more specifically provided for as machines under paragraph 372

than as articles in chief value of metal, not specially provided for, under paragraph 399.

We are unable to agree with the views of counsel for appellees. If it is proper to hold that the imported articles utilize, apply, or modify energy or force, or that they are mechanical contrivances for the transmission of motion, within the meaning of the definition announced by this court in the *Simon, Buhler & Baumann* case, then every tool, no matter how simple, is a machine within that definition. In the same sense, although possibly to a different degree, lead pencils, penholders, knives, forks, spoons, golf clubs, tennis rackets, baseball bats, screw drivers, hammers, chisels, and a multitude of other articles utilize, apply, or modify energy or force, or transmit motion and, accordingly, if the involved articles are machines in a tariff sense, would be included within the provision for machines and, unless more specifically provided for elsewhere, would be dutiable thereunder. Obviously, a holding that the involved articles are machines for tariff purposes would result in reducing the definition of machines to an absurdity. It is true that, by virtue of the leverage obtained, the operator of one of the involved tools is able to apply more power or force to the bits or drills. It is likewise true that, by increasing or decreasing the length of the crank-formed shaft—"sweep"—of the tool, the leverage would be increased or decreased, and correspondingly greater or less power could be applied to the bits and drills.

The mere fact that these tools, solely by virtue of leverage, furnish a mechanical advantage—increased power—is not sufficient to bring them within the provision for all other machines, finished or unfinished, not specially provided for, contained in paragraph 372. We are of opinion that the involved articles do not utilize, apply, or modify energy or force, or transmit motion, within the meaning of the definition of machines announced by this court in the *Simon, Buhler & Baumann* case, *supra*, and we so hold.

The judgment is *reversed*.