UNITED STATES *v.* LAING HARRAR & CHAMBERLIN (No. 3690)[1]

---

[1] T.D. 46763.

236

United States Court of Customs and Patent Appeals, November 6, 1933

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument October 9, 1933, by Mr. Folks and Mr. J. Stuart Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The question in this case is as to whether certain shoe-treeing or shoe-stretching devices are dutiable as classified by the collector at 27½ per centum ad valorem as "all other machines, * * * not specially provided for", under paragraph 372, Tariff Act of 1930, or whether they are free of duty as claimed by the importer under paragraph 1643 of said act as "shoe machinery."

The question is also raised in this court by the Government as to whether or not the devices are in fact machines. The Government points out that if they are not machines they should be held to be dutiable as manufactures of metal under paragraph 397 of the same act. The Government admits that if we should so hold, it cannot obtain a higher rate of duty than was returned by the collector, and that in that event the collector's classification should stand without our approval.

The pertinent provisions of the three paragraphs of the Tariff Act of 1930 involved are as follows:

PAR. 372. * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: * * *.

PAR. 397. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, * * * or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

PAR. 1643. * * * shoe machinery, * * *. [Free entry.]

The appraiser in the answer to the protest states in part as follows:

The merchandise, subject to protest, consists of a machine for stretching and shaping shoes and would appear to be such as would be used as equipment in retail shoe stores.

Following Dept. instructions (3-122) of January 29, 1931, they were returned for duty at 27½% as machines n.s.p.f. under paragraph 372, act of 1930.

The collector in his report refers to the devices as "(equipment for retail shoe stores)."

The United States Customs Court sustained the claim of the importers in their protest that the involved articles were shoe machinery, and the Government has appealed to this court from the judgment of the court below. The decision of the court below is brief and contains no discussion of the questions raised here. The court merely stated that from the evidence it, as a matter of law, held that the machines constituting the importation were shoe machinery.

The imported articles sell in this country for $15 each and perform the same duty, according to the testimony, of stretching shoes, as a block for stretching hats. In all, appellees, at the time of the trial below, had imported not more than about one thousand of the involved articles, practically all of which were used in retail shoe stores. The vice president of the appellee's company, who testified, stated that he had never seen but two of the imported devices used in a shoe factory, and that they operated as quickly as a machine that cost $1,500. The record shows that the device is not used in connection with shoes until the shoe is finished, and that it is used in connection with making the shoe easier on the customer's foot, and in the dyeing of shoes. It is used also in shoe repairing in this country.

The device weighs approximately 25 pounds, has a wooden base, with an upright metal portion to which are attached two outwardly extending arms. The whole device is 1½ feet long by 7½ inches wide, and about 1 foot in height. On each projecting arm there is a separate metal, last-shaped device for insertion into the shoe, and below said projecting arm is also a metal piece which goes into the heel of the shoe and is so arranged that when one of the wheels on the screw attachments is revolved, the shoe is stretched lengthwise. A wheel on either side of the extending arms causes the metal lasts inserted into the shoe to move outwardly so as to increase the width of the upper of the shoe. On the metal lasts which accompany the importation and detachable therefrom, in different sizes to fit the desired shoe, are separate, oval pieces of metal which may be so arranged on the metal last as to press at a certain spot on the side or toe part of the shoe so as to so shape the upper as to prevent pressure of the shoe upon corns, bunions, etc.

We cannot agree with the Government that the device at bar is not a machine. It not only has the qualities which were regarded as

requisite in any machine in *Simon, Buhler & Baumann* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537, being a mechanical contrivance for utilizing, or modifying energy or force, or for the transmission of motion, but, in our judgment, fully satisfies the definition of machine found in Webster's New International Dictionary, 1932, which, on account of its completeness and aptness, we here set out at some length:

machine * * * 5. Any device consisting of two or more resistant, relatively constrained parts, which, by a certain predetermined intermotion, may serve to transmit and modify force and motion so as to produce some given effect or to do some desired kind of work; kinematically, a chain with one link fixed (see Chain, n., 8). According to the strict definition, a crowbar abutting against a fulcrum, a pair of pliers in use, or a simple pulley block with its fall, would be a machine, but ordinary usage would hardly include such as these; while an implement or tool whose parts have no relative movement, as a hammer, saw, chisel, plane, or the like, would not, of itself, in any case be a machine. Popularly and in the wider mechanical sense, a machine is a more or less complex combination of mechanical parts, as levers, cog and sprocket wheels, pulleys, shafts and spindles, ropes, chains, and bands, cams and other turning and sliding pieces, springs, confined fluids, etc., together with the framework and fastenings supporting and connecting them, as when it is designed to operate upon material to change it in some preconceived and definite manner, to lift or transport loads, etc. A sewing machine, a paper-making machine, a printing machine, a hoisting machine, and a flying machine, are examples. Machines other than those for operating on material are commonly designated by special names, as the particular forms of hoisting machines (cranes, derricks, elevators, etc.), heat and hydraulic engines, hydraulic and penumatic tools, pumps, etc. A further distinction occurs in engineering practice, machines for shaping, planing, turning, etc., which are operated by power (as by an engine or electric motor), esp. when comprising a large number of intricate parts and partly or wholly automatic in action, being often called *machine tools* or *engine tools*, or simply *machines* or *tools*. * * * (Italics quoted.)

The device at bar, while operated by hand is somewhat complex as to its levers, wheels, shafts and attachments. The case of *United States* v. *Goldenblum & Co.*, 18 C.C.P.A. (Customs) 367, T.D. 44616, relating to carpenter braces is in no sense controlling of the question here involved. A consideration of the device at bar there and a comparison of it with the one at bar here prompts the conclusion that our holding in the last above-cited case that the carpenter braces were not machines does not require that a similar holding be made in the instant case.

It will be noted that the provision in controversy is for "shoe machinery", and while there may be some special reason for Congress using the term "machinery" rather than "machines", that reason we do not think is important here because, if this is a shoe machine in the tariff sense, it would be included within the term "shoe machinery."

We do not believe that the device at bar is a shoe machine or that it falls within said provision for "shoe machinery." In enact-

ing the provision in controversy we conclude that Congress could not have had in contemplation every kind of machine that had anything to do with a shoe. It is probable that Congress, in putting shoe machinery on the free list, was prompted largely by a desire to cheapen the products of such machinery in this country. See *United States* v. *Downing et al.,* 16 Ct. Cust. Appls. 556, 561, T.D. 43294. In this case there has been no reason suggested, and we know of none existing, why Congress would have intended that a device of the character at bar should have been admitted free of duty, when glove stretchers, hat stretchers, and other similar devices were made dutiable.

The appraiser and the collector held that the machine involved was equipment for retail shoe stores. The imported machine, being a device for use in retail stores for stretching the shoe to meet the requirements of a particular customer, we do not feel that it falls within the shoe-machinery provision. It was the duty of the importer to sustain the claim in his protest by showing that it was not such a device as it was held to be by the customs officials, and to show that it was used in a manufacturing operation upon shoes. We think the record wholly fails to show such facts. We are supported in our above conclusion by a consideration of facts disclosed in the Summary of Tariff Information, 1929, at page 2254, under paragraph 1643, where we find the following:

#### SHOE MACHINERY

*Description and uses.*—In shoe machinery are included machines for cutting and sewing shoes and for other manufacturing operations. Many of these machines are highly specialized.

The Tariff Act of 1922, paragraph 1542, contained a provision for shoe machinery identical with the one at bar.

We think the merchandise was properly classified by the collector. The protest of the appellees should have been overruled, and the judgment of the United States Customs Court is *reversed.*