SIMON, BUHLER & BAUMANN (INC.) v. UNITED STATES (No. 1750).[1]

1. CONSTRUCTION, PARAGRAPH 104, TARIFF ACT OF 1913—"STRUCTURAL SHAPES."
    The expression "structural shapes," in paragraph 104, tariff act of 1913, refers to many other kinds of structures than buildings, ships, and similar erections. It was intended by Congress to import a capacity to sustain heavy weights or to resist great tension, or both.

2. CONSTRUCTION, PARAGRAPH 125, TARIFF ACT OF 1913—"MACHINE."
    A machine is a mechanical contrivance for utilizing, applying, or modifying energy or force, or for the transmission of motion. A brewery mash filter is not a machine within the meaning of the expression "finished machine parts" in paragraph 125, tariff act of 1913.

[1] T. D. 37537 (34 Treas. Dec., 157).

38678—19—VOL 8——18

3. CONSTRUCTION, PARAGRAPH 125, TARIFF ACT OF 1913.—"NOT MADE UP INTO ARTICLES."

The expression "not made up into articles," in paragraph 125, tariff act of 1913, does not contemplate finished castings which are to be used as materials for the manufacture of something else, but finished castings which have been advanced beyond the stage of materials and have become manufactures ready for ultimate use.

4. STEEL CHANNELS AND BARS OR GRATES—CAST-IRON FRAMES, PLATES, CENTER PIECES, HEADS, OR ENDS, AND POSTS.

Steel channels for use in the construction of a large and ponderous brewery mash box filter are dutiable eo nomine under paragraph 104, tariff act of 1913. Steel bars or grates for the same use are dutiable as "structural shapes" under the same paragraph. Cast-iron frames, plates, center pieces, heads or ends, and posts for the same use are castings of iron "not made up into articles or finished machine parts" within paragraph 125. It was error to classify any of them as manufactures of metal, under paragraph 167.

## United States Court of Customs Appeals, February 8, 1918.

APPEAL from Board of United States General Appraisers, G. A. 7938 (T. D. 36577).

[Reversed.]

*Hatch & Clute (Edward S. Hatch* and *Vincent P. Donihee* of counsel) for appellant. *Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel) for the United States.

[Oral argument Oct 17, 1917, by Mr. Donihee and Mr. Doherty.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Steel channel irons, steel bars or grates, and frames, plates, center pieces, posts, and heads or end pieces of cast iron, materials ready to be assembled as parts of a mash filter were classified by the collector of customs at the Port of New York as manufactures of metal not specially provided for. In accordance with that classification the goods were assessed for duty at 20 per cent ad valorem under the provisions of paragraph 167 of the tariff act of 1913, which paragraph in so far as it is pertinent to the case reads as follows:

PAR. 167. Articles or wares not specially provided for in this section; * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, * * * and whether partly or wholly manufactured, 20 per centum ad valorem.

The importers objected to the collector's classification and assessment and as reasons for its objection set up by protest duly presented the claim among others, that the goods should have been classified under paragraphs 104 and 125 and subjected to the duty of 10 per cent ad valorem therein prescribed. The paragraphs relied upon by the importer read as follows:

104. Beams, girders, joists, angles, channels, car-truck channels, TT, columns and posts or parts or sections of columns and posts, deck and bulb beams, sashes, frames, and building forms, together with all other structural shapes of iron or steel,

whether plain, punched, or fitted for use, or whether assembled or manufactured, 10 per centum ad valorem.

125. Cast-iron pipe of every description, cast-iron andirons; plates, stove plates, sadirons, tailor's irons, hatter's irons, and castings and vessels wholly of cast iron, including all castings of iron or cast-iron plates which have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles or finished machine parts; * * * 10 per centum ad valorem.

The Board of General Appraisers found, first, that the filter was not a structure and that therefore none of the things above mentioned could be regarded as structural shapes or shapes of iron or steel intended for use as parts of a structure; second, that the mash filter was a machine and that therefore the cast-iron articles which were ready to be joined to the other materials to make up the completed filter were finished machine parts. On the basis of these findings the board ruled that the wares were not within the intention of paragraphs 104 and 125 and held that they were manufactures of metal not specially provided for dutiable under the provisions of paragraph 167 as assessed by the collector. The protests were accordingly overruled, and the importer appealed.

The evidence in the case shows without contradiction that the several articles of cast iron and steel are designed to be used in the construction of a boxlike brewery filter, some 30 feet long, and 4 or 5 feet wide and 4 or 5 feet high. It further appears from the record that the several articles which are here the subject of controversy are finished and ready for use, but that materials other than those imported are required to complete the filter.

The importer contends, first, that the frames, channels, and posts are provided for eo nomine in paragraph 104, and that all of the articles are structural shapes within the meaning and intention of that paragraph; second, that the castings if not dutiable under paragraph 104 are dutiable at the same rate under paragraph 125, inasmuch as they are castings not made up into articles and are not finished machine parts. The Government, on its part insists, first, that none of the articles are ejusdem generis with those provided for in paragraph 104, and that none of them can be regarded as structural shapes because they are not intended to be used in the construction of buildings or of ships; second, that the filter is a machine, and that as the several castings are finished and ready to be assembled to constitute the filter they are finished machine parts and therefore excluded from paragraph 125. We can not agree with either contention of the Government.

No evidence was adduced showing or tending to show that the eo nomine designations of paragraph 104 have a meaning in trade and commerce different from that commonly attributed to them by people in general. Neither is there anything in the paragraph or the act

which would warrant the conclusion that Congress intended to confine the materials, therein provided for, to such as are used for buildings, ships, and similar erections. Indeed, the fact that the paragraph provides for many articles which may be and are used in the construction not only of ships and buildings, but also in the erecting of such well-recognized structures as bridges, wireless towers, trestles, water towers, derricks, dams, canal locks, and filtration plants, coupled with the fact that it enumerates car-truck channels, a class of materials not designed for use in ships or buildings, convinces us that Congress had in mind more than two kinds of structures when the provision was passed.

Although a structure has been defined to be a production composed of parts artificially joined together according to plan and designed to accomplish a definite purpose it may well be doubted whether that definition any longer precisely and truly describes a structure as the word is generally and customarily used. Ordinarily speaking, "structure" carries with it the idea of size, weight, and strength, and it has come to mean anything composed of parts capable of resisting heavy weights or strains and artificially joined together for some special use. But however that may be, certain it is that the expression "structural shapes" does import to people in general a capacity to sustain heavy weights or to resist great tension or both, and the things denominated in paragraph 104 convince us that such were the "structural shapes" which Congress intended to subject to the duty therein prescribed.

The filter which is to be made up in part of the materials in controversy is admittedly "a large and ponderous affair" and for its construction it requires frames, plates, centerpieces, heads, posts, channels, and grates of iron or steel, that is to say, materials of great strength capable of sustaining very considerable weights and tensions. A filter of that size made up of such constituents is, in our opinion, a structure as that word is commonly understood and the channels and grates of steel especially formed and designed for use in its construction are "structural shapes" within the meaning of paragraph 104.

Whether the cast-iron frames, cast-iron plates, cast-iron center pieces, cast-iron heads, and cast-iron posts are "structural shapes of iron or steel" the demands of this appeal do not require us to decide. Materials of that kind are certainly castings of iron and whether or not they are advanced in condition by processes or operations subsequent to casting they are dutiable under paragraph 125 at the same rate as that prescribed by paragraph 104, provided they are not made up into articles and are not finished machine parts. In our opinion, the expression "not made up into articles" as it is employed in paragraph 125 does not contemplate finished castings which are to be used as materials for the manufacture of something else, but

finished castings which have been advanced beyond the stage of materials and have become manufactures ready for ultimate use. Indeed, to hold that the limiting clause "not made up into articles" excludes from the paragraph not only castings finished and ready for *ultimate use,* but also castings finished and ready for use *as materials,* would simply result in reducing to sheer surplusage the provision excepting finished machine parts, because after all finished machine parts are in fact finished materials and nothing more.

Moreover, it is hardly reasonable to assume that Congress first excepted out of the paragraph all castings finished for use as materials and then proceeded to single out for special exception finished machine parts, a class of finished materials.

We think, therefore, that the phrase "not made up into articles" means castings finished and ready for ultimate use and not castings which are mere materials finished and ready for manufacturing purposes.

The filter which is to be made in part of the castings now under consideration can not be regarded as a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion, and therefore in no sense can it be properly called a machine. (See "machine," "mechanical," "mechanism," Standard Dictionary, Webster's New International Dictionary, and Lockwood's Dictionary of Mechanical Engineering Terms.) In fact, a filter for straining the malt from the malt liquor of the brewer's mash is no more a machine than is the kitchen colander or a box of sand for clearing muddy water. As the filter is not a machine, the castings which are destined to become parts of it are not machine parts and are consequently not excepted from the operation of paragraph 125.

We hold, first, that the channels of steel are provided for by name in paragraph 104 and that the steel bars or grates are "structural shapes" within the scope of the same paragraph; second, that the cast-iron frames, cast-iron plates, cast-iron center pieces, cast-iron heads or ends and cast-iron posts are castings of iron not made up into articles or finished machine parts and that they are therefore provided for in paragraph 125; third, that the goods in question are dutiable at 10 per centum ad valorem and that the protest should have been sustained.

Accordingly, the decision of the Board of General Appraisers is *reversed.*