JUDSON FREIGHT FORWARDING CO. *v.* UNITED STATES (No. 3511) [1]

[1] T. D. 46038.

United States Court of Customs and Patent Appeals, November 30, 1932

*Puckhafer, Rode & Tompkins* (*George J. Puckhafer* and *Martin T. Baldwin* of counsel) for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Fouts, Amerman, Patterson & Moore* (*R. C. Patterson* of counsel) *for amicus curiae.*

[Oral argument October 6, 1932, by Mr. Puckhafer, Mr. Baldwin, Mr. Folks, and Mr. Patterson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding certain imported steel angles, some 2 by 2 by three-sixteenths inches imported in 30-foot lengths, and others 2 by 2 by one-fourth inches imported in 20-foot lengths, dutiable as "steel not specially provided for" at three-tenths of 1 cent per pound under paragraph 304 of the Tariff Act of 1922, as classified by the collector at the port of Boston.

Paragraph 304 reads:

PAR. 304. Steel ingots, cogged ingots, blooms, and slabs, by whatever process made; die blocks or blanks; billets and bars, whether solid or hollow; shafting; pressed, sheared, or stamped shapes, not advanced in value or condition by any process or operation subsequent to the process of stamping; hammer molds or swaged steel; gun-barrel molds not in bars; alloys not specially provided for used as substitutes for steel in the manufacture of tools; all descriptions and shapes of dry sand, loam, or iron molded steel castings; sheets and plates and steel not specially provided for; all of the foregoing valued at not over 1 cent per pound, two-tenths of 1 cent per pound; valued above 1 cent and not above 1½ cents per pound, three-tenths of 1 cent per pound; * * *.

It is contended by counsel for appellant that the merchandise is properly dutiable as "angles" at one-fifth of 1 cent per pound under paragraph 312 of that act, which reads:

PAR. 312. Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, deck and bulb

beams, and building forms, together with all other structural shapes of iron or steel, not assembled, manufactured or advanced beyond hammering, rolling, or casting, one-fifth of 1 cent per pound; any of the foregoing machined, drilled punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting, 20 per centum ad valorem; sashes, frames, and building forms, of iron or steel, 25 per centum ad valorem.

Although other merchandise was involved in the protest, counsel for the parties, on the trial below, entered into a stipulation confining the issues to the dutiable classification of the hereinbefore-described steel angles, which, it was agreed, were the same in material, size, and use as those involved in the case of *J. T. Steeb & Co.* v. *United States*, protests 320047–G, etc., T. D. 43602, and held by the United States Customs Court to be dutiable as steel angles under paragraph 312, *supra*. It was further stipulated that the record in that case and also the records in the cases of *Illinois Central Railway Co.* v. *United States*, protest 333300–G, and *Markle Steel Co.* v. *United States*, protests 342161–G, etc., should be incorporated as part of the record in the case at bar. The record includes evidence submitted at Portland, Milwaukee, Chicago, Philadelphia, New York, Houston, and San Francisco, which was directed to the uses and to the commercial designation of the articles of the general character of those in question.

The court below disposed of the issue of commercial designation by holding that the involved merchandise was definitely, uniformly, and generally known and recognized in the trade and commerce of the United States as "angles"; that, although the Government introduced some evidence, both oral and documentary, tending to establish that many of the large steel companies distinguished, for manufacturing purposes and the maintenance of price differentials, between large structural shapes, on the one hand, and small shapes, those with legs or webs measuring less than three inches, on the other, it was the trade practice to buy and sell the involved and like articles, although their dimensions varied, as "angles."

With regard to the commercial uses of the involved angles the court found that they were not chiefly used for "*structural purposes*, as that term has been judicially defined" in the case of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, and were not capable of such uses. In applying the doctrine of chief use and in overruling the protest the court, among other things, said:

If we read the decisions aright paragraph 312 is predicated solely upon the chief use made of the articles therein provided for, and the test of classification thereunder is that the articles must possess a "capacity to sustain heavy weights or to resist great tension or both," and as such be chiefly used in a structure to the extent of being at least *ejusdem generis* with the articles denominated in the paragraph. This conclusion would seem to be inevitable by reason of the expression "together with all other structural shapes of iron or steel."

It is contended by counsel for appellant and by *amicus curiae* that the *eo nomine* provision for angles in paragraph 312 is unlimited and includes all angles, regardless of size or use, of iron or steel, not assembled, manufactured or advanced beyond hammering, rolling, or casting. They insist that the Summary of Tariff Information, 1920 and 1921, prepared by the Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives and the Finance Committee of the Senate, respectively, at the time the provisions of that paragraph were before the Congress for consideration, substantiate their views.

In view of the fact that the information furnished by the Tariff Commission in the two reports referred to by counsel is substantially the same, we quote only from the Summary of Tariff Information, 1920, page 185:

> *Description and uses.*—*Structural shapes* are iron or steel rolled for structural purposes. They are classified into heavy and light—the latter being those with the leg or web less than 3 inches—and are given commercial names, e. g., I-beams, channels, joists, girders, angles, tees, and zees, names largely descriptive of their cross-section appearance. Nearly 90 per cent of the country's production are heavy structural shapes. They are used in buildings, bridges, ships, cars, etc. Light shapes are used in the manufacture of agricultural implements, bedsteads, fences, safes, automobiles, and other articles requiring light sections.
>
> \*     \*     \*     \*     \*     \*     \*
>
> The prices of light structural shapes are generally higher per unit of weight than those of heavy shapes, and under a system of specific duties the rate should ordinarily be higher to give the same ad valorem duty. Cost of transportation is a more important element in the prices of heavy than of light shapes.
>
> \*     \*     \*     \*     \*     \*     \*
>
> INTERPRETATION AND COMMENTS
>
> The term *"structural shapes"* was interpreted to refer to many other kinds of structures than buildings, ships, and similar erections (8 Ct. Cust. Appls. 273, of 1918) and to include wrought-iron bars for roofs and skylights (G. A. 1484, T. D. 12933, of 1892); steel bulb bars for deck beams (G. A. 1936, T. D. 13698, of 1893); ornamental ironwork representing leaves and other decorations (G. A. 4119, T. D. 19198, of 1898); and steel bars or grates for use in the construction of a brewery mash filter (8 Ct. Cust. Appls. 273, of 1918); \*   \*   \*.

Finally counsel for appellant and *amicus curiæ* argue that, if it was the congressional purpose to limit the provisions in question to such angles only as were used for structural purposes, the evidence of record clearly establishes that those here involved are so used and that, accordingly, the judgment should be reversed.

Counsel for the Government contend that steel angles, with legs or webs less than three inches, are not structural shapes and are, therefore, not angles within the meaning of the provisions of paragraph 312; that the provisions of that paragraph were intended to be limited to such articles as were "exclusively *used as structural shapes,*" and

to those only which are "definitely dedicated to substantial structural shapes"; and that, as appellant failed to establish that the involved articles were *chiefly* used for structural purposes, the judgment should be affirmed. The decisions of this court in the cases of *Simon, Buhler & Baumann (Inc.)* v. *United States, supra,* and *United States* v. *Henry L. Exstein Co. (Inc.),* 16 Ct. Cust. Appls. 328, T. D. 43079, which will be hereinafter referred to, are cited by counsel for the Government as supporting their construction of the provisions in question.

It appears from the record that steel angles having legs or webs measuring less than three inches are made in bar mills and are sometimes referred to in the trade as bar-mill size angles and as small shapes, the words "bar-mill size" being merely descriptive of angles rolled in those mills. Angles having legs or webs measuring more than three inches are rolled in so-called "structural mills."

It clearly appears from the record that the involved angles or small shapes are used substantially for structural purposes in ceilings, walls, and partitions in buildings; as "tieings or anchors to keep a building from spreading"; for "building up joists"; as "steel trusses, roof trusses," in garages, factories, and "over courts in hotels"; in the construction of columns, posts, and in—

skylight construction and roof purlins for supporting the tile roofing, and in the bracing of latticed members, columns, sidewalks, supporting greenhouse construction, elevator guides;

in the framework of pump houses and other like structures; in the construction of oil tanks; in oil-well derricks, ranging from 15 feet to 115 feet in height; in the making of booms for traveling cranes; and also in the manufacture of agricultural implements, road and grading machinery, hoisting and conveying machines, fences, safes, automobiles, bedsteads, and in a variety of other articles requiring light sections.

One of the Government witnesses, in discussing angles with legs or webs measuring less than three inches, including those measuring only five-eighths inch, stated that they were used in the manufacture of a variety of articles, including toys. Obviously he did not intend to be understood as saying that angles of the size of those here involved were used in the manufacture of toys.

In the *Simon, Buhler & Baumann (Inc.)* case, *supra,* this court, in holding steel channel irons and steel bars or grates, ready to be assembled as parts of a "box-like brewery filter," 30 feet long, 4 or 5 feet wide, and 4 or 5 feet high, dutiable as structural shapes of steel under paragraph 104 of the Tariff Act of 1913, the predecessor of paragraph 312, *supra,* and in referring to the arguments of counsel for the Government that the articles there involved were not structural shapes

because they were not intended to be used in the construction of buildings or ships, among other things, said:

\* \* \* Neither is there anything in the paragraph or the act which would warrant the conclusion that Congress intended to confine the materials, therein provided for, to such as are used for buildings, ships, and similar erections. Indeed, the fact that the paragraph provides for many articles which may be and are used in the construction not only of ships and buildings, but also in the erecting of such well-recognized structures as bridges, wireless towers, trestles, water towers, derricks, dams, canal locks, and filtration plants, coupled with the fact that it enumerates car-truck channels, a class of materials not designed for use in ships or buildings, convinces us that Congress had in mind more than two kinds of structures when the provision was passed.

Thereupon, the court discussed the meaning of the term "structural shapes" and, in this connection, said:

Although a structure has been defined to be a production composed of parts artificially joined together according to plan and designed to accomplish a definite purpose it may well be doubted whether that definition any longer precisely and truly describes a structure as the word is generally and customarily used. Ordinarily speaking, "structure" carries with it the idea of size, weight, and strength, and it has come to mean anything composed of parts capable ﹐ f resisting heavy weights or strains and artificially joined together for some special use. But however that may be, certain it is that the expression "structural shapes" does import to people in general a capacity to sustain heavy weights or to resist great' tension or both, and the things denominated in paragraph 104 convince us that such were the "structural shapes" which Congress intended to subject to the duty therein prescribed.

The language, "the capacity to sustain heavy weights or to resist great tension or both," used by the court in that decision, is open to widely divergent interpretations. However, if it is read in connection with other language in the decision and the issues there involved, it is obvious that the court did not intend to define, except for the purposes of that case, the statutory term "structural shapes." It was there pointed out that structural shapes were used not only in buildings and ships but, also, in many other structures, "anything," as the court said, "composed of parts capable of resisting heavy weights or strains and artificially joined together for some special use." We might add that in that case the court was not aided by a summary of tariff information such as is before the court in the case at bar.

In the case of *United States* v. *Henry L. Exstein Co.* (*Inc.*), *supra*, this court held that steel bars, 1⅛ inches square and 60 feet in length, and round steel bars, three-eighths inch and one-half inch in diameter and 40 feet in length, used for the reinforcement of concrete in floors, conduits, bridges, walls, and in "practically every structure where concrete is used," were dutiable as structural shapes under paragraph 312, *supra*, and, in concluding its opinion, said:

\* \* \* it is argued that if the deformed bars in issue here are to be treated as structural shapes of steel, then all steel which goes into a structure and becomes

a part thereof must be so treated. This does not follow, and this opinion should not be taken as so holding. The classification of such steel will, in each case, depend upon its designation, character, and use, whether it ought, properly, to be considered as material or structural shapes and forms.

It is claimed by counsel for the Government that the quoted language requires the application of the doctrine of chief, or of exclusive, use in order to determine whether an article is provided for in paragraph 312. We are not of that opinion.

The court in that case merely pointed out that in order to distinguish between mere materials and structural shapes the designation, character, and use of an article should be considered, and, when the common meaning of each of the terms "structural shapes" and "angles" is taken into consideration, the force of the court's observation is apparent.

Structural shape, *Engin. & Arch.*, the shape of a member especially adapted to structural purposes, esp. in giving the greatest strength with the least material. Hence, *Colloq.*, any steel or iron member of such shape, as channel irons, I beams T beams, etc., or, sometimes, a column, girder, etc., built up with such members. (Webster's New International Dictionary.)

Angle iron. *Mech.* A bent piece used for joining two or more parts of a composite structure at an angle; specif., a rolled iron or steel bar of L section, largely used in structural ironwork. (Webster's New International Dictionary.)

From what has been said it is obvious that the involved angles are within the common meaning of the terms "angles" and "structural shapes." Furthermore, after a careful consideration of the record, we find ourselves in accord with the trial court's holding that the evidence is wholly insufficient to establish that either of those terms has a meaning in the trade and commerce of the United States different from its common meaning. However, we find ourselves out of harmony with that part of the court's decision holding that the doctrine of chief use should be applied for the purpose of determining the scope of the provisions of paragraph 312.

Without intending to be understood as giving precise definitions of the terms "angles" and "structural shapes," as those terms were used by the Congress in paragraph 312, we should, nevertheless, in considering the purposes of the Congress, take into consideration the common meanings of those terms, together with the summaries of tariff information before the Congress at the time the paragraph was enacted.

The Congress was informed by the Tariff Commission that similar provisions contained in paragraph 104 of the act of 1913 had been construed by the courts to apply to shapes used in structures other than buildings, ships, and similar erections, and that wrought-iron bars for roofs and skylights, ornamental ironwork representing leaves and other decorations, and steel bars or grates used in the construction of a brewery-mash filter, were included within the provisions of

that paragraph. Furthermore, the Tariff Commisssion stated in its report that *structural shapes, rolled for structural purposes,* included not only the heavy but the light shapes; that the light shapes were those with legs or webs less than three inches; that both the heavy and the light shapes had commercial names, such as, "I-beams, channels, joists, girders, angles, tees, and zees"; that such names were largely descriptive of their cross-section appearance; that the large structural shapes were used in buildings, ships, bridges, cars, etc.; and that the light structural shapes were used in the manufacture of—

agricultural implements, bedsteads, fences, safes, automobiles, and other articles requiring light sections.

The Tariff Commission further informed the Congress that the price of light structural shapes was generally higher per unit of weight than that of the heavy shapes and suggested that, although the cost of transportation of the heavy shapes was greater than that of the light, the specific duty should be higher on the "light structural shapes" to give the two classes—the light and the heavy—the same ad valorem duty.

With this information and these suggestions before it the Congress failed to distinguish between the light "structural shapes," those with legs or webs less than three inches, and the heavy structural shapes, those with legs or webs greater than three inches. What, then, is the proper conclusion to be drawn from these facts? Should we read into the paragraph limitations and differentiations the Congress deliberately refused to make? The answer is obvious. The Congress having deliberately refrained from distinguishing between the light and the heavy structural shapes, we may not do so. Accordingly, we are of opinion that the Congress did not intend to limit the term "structural shapes" to such shapes of iron and steel as were used only in large structures, but that it intended to include therein all structural shapes of iron or steel having the "capacity to sustain [relatively] heavy weights or to resist great tension or both," and designed for the utilization of such capacity, to be used as such shapes, and suitable for such use in buildings, bridges, ships, cars, etc., requiring either heavy or light sections, or both, and also in certain "other articles *requiring light sections*" only. (Italics ours.)

It has been fully established that the involved articles—steel angles—have the capacity to sustain relatively heavy weights and to resist great tension, and that they are designed to be, and are, used as "structural shapes" in buildings, derricks, and other structures requiring light sections. Accordingly, as they are not assembled, manufactured, or advanced beyond rolling, we must hold that they are structural shapes of steel—angles—and *eo nomine* provided for in paragraph 312 at one-fifth of 1 cent per pound.

The judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.

### CONCURRING OPINION

BLAND, Judge, specially concurring: I concur heartily in the finding of the majority that the steel angles at bar which are suitable for use and are used in ceilings, walls, and partitions in buildings, in building garages, elevator guides, booms for travelling cranes, etc., fall within the provision for angles in paragraph 312.

The opinion of the majority is based upon the common meaning of the term "angle" and the effect given to the facts disclosed in the summary of tariff information which was before Congress at the time the paragraph was enacted.

When the Tariff Commission furnishes the committee of Congress, framing a bill, a definition of a term and other pertinent information with reference to items included in a paragraph in a former tariff enactment, it is always proper to consider this fact in giving interpretation to the paragraph. It is reasonable to assume that committees of Congress would be greatly influenced by such information. It does not follow, however, that Congress always accepts and acts upon such information. There have been many instances where such information has been wholly ignored.

In the case at bar we must remember that the definition of structural shapes in the *Simon, Buhler & Baumann (Inc.)* case was before it, and the framers of the bill had a right to believe that the pronouncements in this case had become settled law.

The commission reported to Congress in substance (as affects this importation) that structural shapes of steel with legs or webs less than three inches wide, used for making bedsteads, were included within this paragraph as structural shapes. It may be that the particular merchandise involved in this shipment might be made into side pieces for bedsteads, and the mere fact that it was used for bedsteads would not take it out of the paragraph if it was designed to be used and was suitable for use for the other purposes to which reference has been made. It meets squarely the definition in the *Simon, Buhler & Baumann (Inc.)* case.

But, let us suppose, that angles of the dimensions at bar had been *punched, machined, assembled,* and *fabricated* for use in making bedsteads alone, would it be reasonable to conclude that, in view of the *Simon, Buhler & Baumann (Inc.)* case then before Congress, it contemplated classification of such material under the second provision in paragraph 312?

The opinion of the majority does not hold that this kind of material would be dutiable under the paragraph, but the same reasoning employed in arriving at the majority conclusion would suggest the

same treatment for the bedstead angles. I say this because they are angles within the common meaning of the term; they are of the shape and size which the Tariff Commission informed Congress were used for building bedsteads, and *they have the capacity to sustain relatively heavy weights and are designed for the utilization of such capacity.*

Notwithstanding the fact that the fabricated bedstead sides meet the test of the majority opinion, it is doubtful if anyone would contend that they were structural shapes or angles within the meaning of paragraph 312. Congress in its tariff treatment of structural shapes and in framing paragraph 312 surely was not concerning itself with steel angles of the size or character used exclusively for making small articles like bedsteads, wheelbarrows, office furniture, etc.

My sole purpose in specially concurring is to point out that I, at least, have thought it advisable to point out in the court's opinion the extent to which the court would go in following out the reasons for its conclusions in this case.