The judgment of the United States Customs Court is *affirmed.*

·· UNITED ·STATES *v.* ALEXANDER McNAB ·(No. 3691) [1]

United States Court of Customs and Patent Appeals, January 29, 1934

*Charles D. Lawrence,* Assistant Attorney General (*Richard E. FitzGibbon* and *Ralph Folks,* special attorneys, of counsel), for the United States.
*Tompkins & Tompkins* (*Allerton de C. Tompkins* of counsel) for appellee.

[1] T. D. 46928.

[Oral argument December 13, 1933, by Mr. Folks and Mr. Allerton de C. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, holding certain merchandise consisting of torsion meters, imported at the port of Philadelphia, to be dutiable as machines under the provisions of paragraph 372 of the Tariff Act of 1922 at the rate of 30 per centum ad valorem.

The merchandise was classified by the collector for duty as manufactures of metal at 40 per centum ad valorem under the provisions of paragraph 399 of said tariff act.

Appellee protested such classification, claiming the merchandise to be properly dutiable as "all other machines or parts thereof" at 30 per centum ad valorem under the provisions of paragraph 372, *supra*.

The pertinent parts of the competing paragraphs read as follows:

PAR. 399. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, * * * or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 40 per centum ad valorem.

PAR. 372. * * * all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem * * *.

Upon the case being tried and submitted, the trial court sustained the protest of appellee and entered judgment accordingly; the Government has appealed therefrom.

The said merchandise was described by appellee's witness as consisting of torsion meters used to determine the horsepower of the engine of a vessel transmitted through the propeller shaft. Each torsion meter weighs approximately 1,020 pounds, is about five or six feet long, cylindrical in form, is attached to and surrounds the propeller shaft inside of the vessel, in the space provided for said shaft. As the propeller shaft revolves, the torsion meter revolves with it, and two mirrors set in the torsion meter, one stationary and one movable, cast a reflection from a light upon a scale; from this scale the horsepower transmitted through the shaft is arrived at by applying a certain mathematical formula. The torsion meter has no operating function of its own which sets itself in motion, but is revolved by the propeller shaft.

In the Government's brief we find the following statement:

* * * The witness relates what it [the torsion meter] does but fails to relate how it does it. As far as the mirrors are concerned, there is no testimony whatsoever as to what holds the immovable mirror (H) in place, or what makes the movable mirror (C) move. From an examination of Illustrative Exhibit B, both C and H are on the same flange (flange A), and are on opposite sides of the propeller shaft itself. As flange A is bolted to the propeller shaft (R., 9), it is

impossible, without some explanation, to see what, when the propeller shaft rotates, holds one mirror stationary, while the other revolves with the shaft.

We are in accord with most of the foregoing statement, but do not regard it as essential to our decision herein that the scientific principles governing the operation of the device, or the detailed manner of their application, be fully understood.

The only question involved is whether it is a machine, as that word has been defined by this court, or whether it is described in said tariff act only as a manufacture of metal.

We do not think the article in question is a mechanical contrivance for utilizing, applying, or modifying energy or force, or for the transmission of motion, within the meaning of those terms as used in the leading case of *Simon, Buhler & Baumann, Inc.* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537.

The device certainly does not transmit motion, for it is attached to nothing but the propeller shaft, which causes the device to revolve. While it may be said that motion is transmitted from one part of the device to another, there is no motion transmitted outside of the device itself. It is clear that the device does not modify energy or force. The only energy or force applied is that exerted by the engine upon the propeller shaft, and the torsion meter does not in any way modify such energy or force.

But one question remains, viz, Does the torsion meter utilize energy or force? Its only purpose is to measure the energy transmitted through the propeller shaft for the purpose of driving the propeller of the vessel. The torsion meter does not take from said propeller any appreciable amount of energy, and, as we understand it, reproduces only in a magnified way the action of the propeller shaft itself.

We think that the term "utilizing * * * energy or force" must have a reasonable construction, and while it is not possible to declare exactly what constitutes a utilization of energy or force, we are of the opinion that the mechanism here involved should not be regarded as utilizing energy.

It is our opinion that the articles here involved are not contrivances for utilizing, applying, or modifying energy or force, or for the transmission of motion, and are not machines classifiable under the provisions of said paragraph 372, as held by the lower court.

The judgment of the United States Customs Court is *reversed.*