UNITED STATES *v.* DYSON SHIPPING CO., INC., ET AL. (No. 4360)[1]

[1] C. A. D. 184.

United States Court of Customs and Patent Appeals, November 3, 1941

*Paul P. Rao*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General and *Richard E. FitzGibbon*, special attorney, of counsel); for the United States.

*Eugene R. Pickrell* (*Eugene A. Chase*, of counsel) for appellees.

[Oral argument October 8, 1941, by Mr. Lawrence and Mr. Chase]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal brings before us for review a judgment of the United States Customs Court (Second Division) sustaining four protests by appellees against the classification by the collector at the port of New York of certain so-called dental operating pump chairs under paragraph 397 of the Tariff Act of 1930, as articles in chief value of metal, at the rate of 45 per centum ad valorem. Said judgment sustained a claim in each of said protests that the articles were properly dutiable under paragraph 372 of said act as machines, not specially provided for, at the rate of 27½ per centum ad valorem.

Before the Customs Court the protests were consolidated for purposes of trial.

Said paragraphs 372 and 397, insofar as they are here pertinent, read as follows:

PAR. 372. * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: * * *.

PAR. 397. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated * * *, whether partly or wholly manufactured, 45 per centum ad valorem.

The case was submitted to the trial court upon a stipulation which, insofar as is here material, reads as follows:

It is hereby stipulated and agreed by and between the attorneys for the respective parties hereto, subject to the approval of the Court:

\*      \*      \*      \*      \*      \*      \*

(2) That the merchandise, the subject of the above protests, consists of Dental Operating Pump Chairs.

(3) That the said Dental Operating Pump Chairs are the same in all material respects as the Dental Operating Chairs which were the subject of Suit No. 4254, *United States* vs. *Dyson Shipping Company*, C. A. D. 96, since they are composed of the same materials, since they are the same in construction, and since they have the same uses.

(4) That the record in Suit No. 4254, *United States* vs. *Dyson Shipping Company*, C. A. D. 96, may be incorporated and made a part of the record herein.

The only question involved in this appeal is whether the involved articles are "machines" within the meaning of that term as used in said paragraph 372. Identical merchandise was before this court in the case of *United States* v. *Dyson Shipping Co.*, 27 C. C. P. A. (Customs) 260, C. A. D. 96, but the question now before us was not therein involved.

The method of operation of the chairs in question is stated in the decision of the trial court as follows:

In the incorporated case photographs of one of the chairs there in question were admitted in evidence as illustrative exhibits A and B. Referring to the number parts as indicated on said illustrative exhibit B, the chair was shown to be operated as follows: Pedal number 34 is pressed down with the foot, which forces the attached piston number 18 down in the chamber number 21, thereby forcing oil into the middle chamber and raising the chair; release of pedal number 34 causes new oil to be sucked in through intake valve number 24, and valve number 33 prevents this oil from running back to the reservoir; by a repetition of this process the chair is raised to the desired height; pressing down pedal number 32 opens valve number 37, releasing the pressure, whereupon the weight of the chair is sufficient to force the oil back to the main tank.

Following the above quotation the decision states:

It is evident from the foregoing that the bumping [pumping] mechanism is essential to the operation of the chair, and without such mechanism it would be impossible for the chair to perform the purpose for which it was intended.

Upon the entire record we are satisfied that the chair in question is a mechanical contrivance for utilizing and applying energy or force for the transmission of motion. It is therefore a machine within the meaning of that term as judicially defined in *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537. The claim of the plaintiffs is therefore sustained alleging said mechanism to be a machine not specially provided for and as such dutiable at the rate of 27½ per centum ad valorem under said paragraph 372. As to all other merchandise the claims are overruled. Judgment will be rendered accordingly.

In the case of *United States* v. *Guth Stern & Co., Inc.*, 21 C. C. P. A. (Customs) 246, T. D. 46777, we reviewed the decision of this court in the case of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8

Ct. Cust. Appls. 273, T. D. 37537, relied upon by the trial court, and stated:

A careful analysis of this court's opinion in the *Simon, Buhler, & Baumann* case, *supra*, will disclose that the court was not there confronted with the necessity of attempting to lay down any precise and all-inclusive definition of the term "machine" for tariff purposes, nor does the opinion itself purport to do so. It merely recites certain characteristics of a machine as that term and certain associated terms are defined in the standard authorities there cited, for the sole purpose of negativing the contention there made by the Government that a brewery mash filter was a machine.

In headnoting the case, the reporter, utilizing the language used in the text of the opinion, stated the definition affirmatively, and it has since been often quoted by this court, and by the Customs Court, in various cases, in the form adopted by the reporter.

There is no intention of here intimating that the definition, insofar as there stated, is inaccurate. Upon the contrary, it has been consistently adhered to by us, and, by implication at least, it received legislative endorsement, particularly in the Tariff Act of 1930. *Vide* Summary Tariff Information 1929, volume 1, page 841.

However, it has never been the purpose of this court to hold arbitrarily that the definition is so rigid and exact in its terms as to include any and all devices and mechanisms that may happen to be literally embraced within it. An examination of numerous definitions given in the very authorities cited in the *Simon, Buhler & Baumann* case, *supra*, discloses distinctions which should be taken as matters of common knowledge. For example, in Webster's New International Dictionary, it is said:

* * * According to the strict definition, a crowbar abutting against a fulcrum, a pair of pliers in use, or a simple pulley block with its fall, would be a machine, but ordinary usage would hardly include such as these; while an implement or tool whose parts have no relative movement, as a hammer, saw, chisel, plane, or the like, would not, of itself, in any case be a machine. Popularly and in the wider mechanical sense, a machine is a more or less complex combination of mechanical parts, as levers, cog and sprocket wheels, pulleys, shafts, and spindles, ropes, chains, and bands, cams and other turning and sliding pieces, springs, confined fluids, etc., together with the framework and fastenings supporting and connecting them, as when it is designed to operate upon material to change it in some preconceived and definite manner, to *lift or transport loads*, etc. [Italics not quoted.]

The language in the *Simon, Buhler & Baumann* case referred to in the above quotation reads:

The filter which is to be made in part of the castings now under consideration can not be regarded as a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion, and therefore in no sense can it be properly called a machine. (See "machine," "mechanical," "mechanism," Standard Dictionary, Webster's New International Dictionary, and Lockwood's Dictionary of Mechanical Engineering Terms.) * * *

In the case of *United States* v. *Wm. Goldenblum & Co.*, 18 C. C. P. A. (Customs) 367, T. D. 44616, the question involved was whether ordinary carpenter's braces were classifiable under paragraph 372 of the act of 1922, which, so far as is here pertinent, was similar to paragraph 372 of the Tariff Act of 1930. We described the article there involved as follows:

A carpenter's brace is used for turning boring bits or drills, and consists of a crank-formed shaft—"sweep"—with jaws at one end for holding a bit or drill.

and a swiveled head at the other end, by which the brace and, consequently, bit or drill is pressed forward by the operator, who, by turning the crank-formed shaft—"sweep"—with his hand, imparts a rotating motion to the bit or drill.

The imported articles may be used for boring holes in metal or wood, and are always operated by hand power.

By means of the ratchet attachment, the bit or drill, when desired, is turned in one direction only, so that, when the operator reverses the motion of the crank-formed shaft, the bit or drill does not change position. Accordingly, by means of this attachment, the operator may handle the brace in a very limited space.

We concluded our opinion in that case with the following:

The mere fact that these tools, solely by virtue of leverage, furnish a mechanical advantage—increased power—is not sufficient to bring them within the provision for all other machines, finished or unfinished, not specially provided for, contained in paragraph 372. We are of opinion that the involved articles do not utilize, apply, or modify energy or force, or transmit motion, within the meaning of the definition of machines announced by this court in the *Simon, Buhler & Baumann* case, *supra,* and we so hold.

In the case at bar the chairs in question are not operated "solely by virtue of leverage." While it is true that the original energy or force is applied by a pedal member pressed down with the foot, that force is modified by a system of valves and pistons, with the final result of raising and lowering the chair. Unquestionably the chair not only utilizes energy but modifies the energy originally applied to secure the desired result.

Appellant relies upon our decision in the case of *United States* v. *Adler-Jones Co.,* 20 C. C. P. A. (Customs) 397, T. D. 46231, in which we held that a certain figure or manikin was not a machine classifiable under paragraph 372 of the Tariff Act of 1930. The figure in question was equipped with a concealed mechanism employing a spring and pendulum arrangement; when this mechanism was wound with a key the body and head of the figure was caused to swing back and forth. In our opinion in said case we stated:

The mechanical device which causes the swinging or rocking of the body and head is but a small part of the figure and affects only a portion thereof. The article, we think, must be considered as a whole, no language of the tariff act being found which suggests any other method of treatment.

When so considered we do not think the figure meets the definition of "machine" as that term is commonly and commercially used and understood and as it was applied in the *Simon, Buhler & Baumann* case, *supra.*

In the case at bar the pumping mechanism is essential to the uses for which the chair is designed, and constitutes a substantial portion of the chairs. In our opinion the decision in the case last above cited is not applicable in the case at bar.

Appellant also relies upon the case of *United States* v. *McNab,* 21 C. C. P. A. (Customs) 406, T. D. 46928, in which we held that certain torsion meters were not classifiable as machines under paragraph 372

of the Tariff Act of 1922 for the reason that they neither utilized, applied, nor modified energy or force, nor were they utilized for the transmission of motion. In the case at bar, however, the involved chairs clearly utilize energy in the manner hereinbefore described.

As stated in the case of *United States* v. *Guth Stern & Co., Inc., supra,* the definition of a machine approved by us in the *Simon, Buhler & Baumann* case and in later cases should not be held to include all devices and mechanisms that may happen to be literally embraced within it, and we quoted from the definition of "machine" as found in Webster's New International Dictionary to illustrate the distinctions which should be taken as matters of common knowledge. However, it will be noted from such definition, hereinbefore quoted, that articles like that here involved are not excluded from the definition, but are clearly embraced within it, for they comprise a complex combination of mechanical parts, the purpose of which is "to lift * * * loads." Obviously the elevation of a person in the chair is lifting a load, and the definition referred to expressly states that a contrivance comprising a complex combination of mechanical parts, designed, among other things, to "lift or transport loads," is a machine.

It is our opinion that the involved chairs are "machines" within the meaning of that term as used in paragraph 372 of the Tariff Act of 1930.

This conclusion is, in our opinion, supported by the fact that in the Summary of Tariff Information 1929, pp. 841–842, under the heading of "Decisions" respecting paragraph 372 of the Tariff Act of 1922, the attention of Congress was called to the fact that "*Morris hoist blocks,* used in lifting objects," were in T. D. 41196 held by the Board of General Appraisers (now the United States Customs Court) to be parts of machines under paragraph 372 of the Tariff Act of 1922, although the hoists of which they were a part were operated by hand (p. 842).

Also in said Summary of Tariff Information, on page 841, the attention of Congress was called to the fact that the Board of General Appraisers had held that automobile jacks were classifiable as machines under paragraph 372 of the Tariff Act of 1922 (Abstract 48549.)

Although as stated above the attention of Congress was called to these decisions, paragraph 372 of the Tariff Act of 1930 was enacted without any provision for excluding from the term "machines" articles the subject of such decisions.

We do not here invoke the doctrine of legislative adoption of judicial decision as applied to the chairs before us, but the fact that Congress did not see fit, after the rendering of such decisions to limit the meaning of the term "machines," as used in paragraph 372 of the Tariff Act of 1930, is persuasive to us of the correctness of our

conclusion that the chairs here involved were correctly held by the trial court to be machines classifiable under paragraph 372.

Therefore, the judgment of the United States Customs Court is *affirmed*.

BLAND, Judge, dissents.