(C.D. 2061)

JUDSON SHELDON DIVISION NATIONAL CARLOADING CORP. ET AL. *v.*
UNITED STATES

## United States Customs Court, Second Division

(Decided January 14, 1959)

*Eugene R. Pickrell* (*Richard F. Weeks* of counsel) for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: A variety of wares included in several importations was classified by the collector of customs as articles in chief value of metal and duty was imposed thereon at the rate of 22½ per centum ad valorem, as provided in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

Seven protests (covering as many importations), enumerated in schedule "A," attached to and made a part of this decision, were consolidated for trial.

The items in controversy and the respective claims of plaintiffs are set forth in its brief as follows, record references being omitted:

The items "head bolts" and "flights" (285353–K, 289470–K) are parts of a contrivance known as the Lobbe Hobel, referred to sometimes as "the plainer" [planer], and sometimes as "the continuous miner" because "it cuts and loads the coal and conveys it out."

The "Lobbe Hobel" is used for mining coal by shearing the coal off a vein of coal and loading it on to a conveyer and carrying it out of the mine.

It is contended that the Lobbe Hobel is a machine and that the head bolts and flights covered by Protests 285353–K and 289470–K are dutiable as parts of machines under Paragraph 372 of the Tariff Act at the rate of 13¾ per centum ad valorem.

It is conceded that the said bolts and the said flights are "a part of the plainer [planer] machine, and with respect to the bolts, that they are specially designed for use in conjunction with the flights and have no other general use."

\* \* \* \* \* \* \*

The items covered by Protests 261427–K, 292739–K, and 289273–K, namely, pit props, were also classified as manufactures of metal, and are claimed to be dutiable as:

1. Machines in themselves.
2. Parts of machines, i.e., parts of the Lobbe Hobel.

The remaining items, namely, foot plates (285353–K), hinged bars (289257–K), upper tubes and crib release bars (289470–K), deformation tubes (275556–K), and setting claws (292739–K and 289273–K) were also classified as manufactures of metal, and are claimed to be dutiable as:

1. Parts of machines.
2. Structural shapes under Paragraph 312.

The pertinent provisions of the competing paragraphs of the tariff act, as modified, are here set forth:

Paragraph 397, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \* \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* \* \* \* \*

Other (except slide fasteners and parts thereof)___22½% ad val.

Paragraph 372 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 372), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739:

Machines, finished or unfinished, not specially provided for:

\* \* \* \* \* \* \*

Other (except the following accounting machines; bakery machines; calculating machines; combination candy cutting and wrapping machines; combination cases and sharpening mechanisms for safety razors; cordage machines; food cutting or grinding machines; hydraulic impulse wheels and hydraulic reaction turbines; industrial cigarette making machines; internal-combustion engines of the non-carburetor type; machines for determining the strength of materials or articles in tension, compression, torsion, or shear; machines for manufacturing chocolate or confectionery; machines for packaging pipe tobacco; machines for wrapping candy; machines for wrapping cigarette packages; and tobacco cutting machines)_____13¾% ad val.

Paragraph 312 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 312), as modified by the Torquay protocol, *supra*:

Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, and deck and bulb beams, together with all other structural shapes of iron or steel:

Not assembled, manufactured or advanced beyond hammering, rolling, or casting_____0.1¢ per lb.

Machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting_____7½% ad val.

Plaintiffs introduced nine exhibits which were numbered from 1 to 9, inclusive. They consist of a reel of film showing the operation of the planer and some of its appurtenances, a miniature model of a Uerdingen pit prop, and various photographs or other documents.

Four exhibits were introduced by the defendant, marked A to D, inclusive, consisting of two photographs and two pamphlets.

The two witnesses who testified herein were called by plaintiffs. The first witness, Arno M. Schneider Paas, is vice president of the Mining Progress, Inc., Highland Mills, N. Y.; a native of Germany, who, in 1941, became an apprentice in the workshops of the manu-

facturer of the Lobbe Hobel in Westphalia, Germany. During his apprenticeship through the various workshops, the offices, the technical division, the engineer's office, and later in this country engaged in the sales and installation of the machines, he acquired an intimate and intelligent knowledge of the design, construction, and utility of the Lobbe Hobel and its operation.

The second witness, Alfred Newland, is an employee of the Amherst Coal Co., Lundale, W. Va., engaged in the business of mining and producing coal, having been so employed since 1937.

From the testimony of the witnesses and the exhibits in evidence, it appears that the contrivance known as a Lobbe Hobel is designated as a continuous mining machine. It performs the triple functions of shearing coal from a coal face, loading the mined coal, and transporting it from the mined area. The device is powered by a motor, which drives a fluid clutch, transmitting power to a reduction gear. The outgoing shaft of the reduction gear operates a double sprocket unit. This, in turn, pulls a chain to which so-called flights are attached, the purpose of the flights being to pull and convey the coal. The outgoing shaft of the reduction gear also has a sprocket between the machine frame and the reduction gear body that drives a heavy-duty roller chain, which, in turn, is connected to a multiple plate clutch transmitting power to the planer shaft or a Hobel shaft. On the opposite side of the planer shaft is another sprocket which pulls a heavy-duty chain connected to the planer head and performs the actual coal shearing function. Plaintiffs' exhibit 1, a descriptive pamphlet prepared by Gewerkschaft Eisenhutte Westfalia Lunen, Wethmar-Post Lunen, Germany, entitled "Machinery for the Mining Industry," discloses that a Lobbe Hobel is a complicated mechanism composed of 48 different parts.

It is not seriously questioned and we believe the record evidence amply supports the conclusion that the Lobbe Hobel is a machine in the tariff sense. *United States* v. *J. E. Bernard & Co., Inc.*, 30 C.C.P.A. (Customs) 213, C.A.D. 235.

The parties hereto have agreed that the flights and hexagonal head bolts are parts of the Lobbe Hobel continuous miner and that the bolts were specially designed for use in conjunction with said flights and serve no other purpose.

Inasmuch as we are of the opinion that the Lobbe Hobel mechanism is a machine within the purview of paragraph 372 of the Tariff Act of 1930, as modified, *supra*, and in view of the agreement of counsel that the flights and head bolts are parts of such a machine, it follows and we so hold, that said flights and hexagonal head bolts come within the provision for parts of machines, not specially provided for, within the purview of said paragraph 372, for which duty at the rate of 13¾ per centum ad valorem is provided, as claimed by plaintiffs.

We turn our attention now to other articles in controversy, namely, the pit props, foot plates, hinged bars, upper tubes, deformation tubes, and setting claws.

As to the pit props, the record discloses that several models are included in the importations, such as the Uerdingen and the GHH model, all serving the same purpose but differing slightly in their construction. Pit props are used in a mining area to support the roof or overburden and to keep the working area open to enable the miners to operate the Lobbe Hobel machine. In addition to serving as the roof support, the pit props are so constructed that the roof of a mine may be collapsed in a controlled manner, thereby throwing pressure on the coal face which opens cleats in the coal and permits the planer to perform its shearing action in a more efficient manner. In order to set a prop into position, the upper tube thereof is extended from the lower tube by hand and secured in the center of the prop by a locking device which clamps the upper prop tightly into position so that it will carry the load of the immediate overburden. Said tubes are sometimes referred to as compression tubes, deformation tubes, or outer tubes. The locking device consists of a wedge in the case of the Uerdingen pit prop and of a setting claw device on the GHH prop, which are secured in place by hammering.

The pit props, when installed, stand on foot plates which are sometimes welded to the props and, in other instances, are removable.

Attached to the head plates of the props are hinged bars, also known as cantilever bars or headers, which extend horizontally under the roof above the working area of a mine and together with the pit props provide the support of the mine overburden. They fit into prongs in the head plates of the pit props and are thus secured into position.

One of the claims of plaintiffs is that the pit props are parts of the Lobbe Hobel machines, the contention being that, in order for the Lobbe Hobel to perform its functions of shearing, loading, and transporting coal from the coal face of a mine, it is necessary that the mine roof be supported to accomplish the mining operation and for the safety of the workers. It is clear from the record before us that the pit props are not physically attached to the Lobbe Hobel machine nor do they perform any direct function in connection with the mining of coal but merely provide a satisfactory condition under which the mining operation may be performed. We, therefore, do not consider the pit props to be parts of the Lobbe Hobel machine, inasmuch as they are not integral, constituent, or component parts of the continuous miner, which would be required to constitute them as parts of machines for tariff purposes. *United States* v. *Willoughby Camera Stores, Inc.*, 21 C.C.P.A. (Customs) 322, T.D. 46851.

With regard to said pit props, it is alternatively claimed that they are machines in themselves. From the testimony of record and a viewing of the film in evidence as plaintiffs' exhibit 9, it appears that said props are merely upright supports, the upper portion of which telescopes into the lower portion and, when extended manually, are secured in position by a wedge or setting claw device tapped with a hammer into place and evidently lowered or removed when desired in the same simple manner.

It is apparent, therefore, that such devices possess none of the characteristics of a mechanical contrivance which applies, modifies, or controls energy, or transmits motion, within the definition of a machine as attributed to the court's pronouncement in *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537.

We hold, therefore, that the claim of plaintiffs for classification of the pit props in controversy as machines within the purview of paragraph 372 of the Tariff Act of 1930, as modified, *supra*, cannot be sustained and is overruled.

From this holding, it follows that the foot plates, hinged bars, upper tubes, deformation tubes, and setting claws which are used in conjunction with said pit props are not parts of machines for tariff purposes.

The remaining item in controversy is the crib release bars. It appears from the record that when preparing the working area of a mine and prior to the installation of the pit props above referred to, wooden cribs are placed one on top of the other to the height of the mining area and are interspersed with crib release bars, sometimes referred to as chock releases. They support the roof of the mine pending the installation of pit props and hinged bars. When the mining operation has been completed in a particular area and it is desired to move the equipment to a new field of operation, it would be impossible to remove the wooden cribs, if it were not for the crib release bars, due to the fact that the mine roof has been permitted to subside in a controlled manner with the use of the pit props resulting, incidentally, in compressing the wooden cribs.

A crib release bar, also known as a "Cookson Chock Release," consists of a base and upper wedge-shaped piece of cast steel held in a rigid position by means of latches. When it is desired to remove the cribs, the latches of the crib release bar are disengaged manually with the use of a hammer or a bar, causing the crib release bar to collapse and the cribs to settle. Thus freed of the overburden pressure, the cribs and the release bars may be removed for reuse at another mining area.

The record discloses that the wooden cribs with which the crib release bars are used are separate and apart from the coal miner and

from the pit props and are used primarily in the work of preparing an area which is to be mined.

Although unquestionably essential to the overall operation of mining coal, we do not consider the crib release bars to be parts, in a tariff sense, either of the Lobbe Hobel continuous coal miner or of the pit props. It is our view that each of said articles is separate and distinct, the crib release bars and their accompanying cribs serving to support the roof of the mine during the preparation of a new mining area, including the installation of pit props with their hinged bars and other parts which provide the main support of the mine overburden while the Lobbe Hobel machine is actually performing its triple functions of shearing, loading, and transporting coal.

It follows, therefore, that the plaintiffs' claim for classification of the crib release bars as parts of machines in paragraph 372 of the Tariff Act of 1930, as modified, *supra*, is untenable and must be overruled.

Consideration has been given to the contention of plaintiffs that the foot plates, hinged bars, upper tubes, deformation tubes, setting claws, and crib release bars are structural shapes in paragraph 312 of the tariff act, as modified, *supra*.

The provision in paragraph 312 relied upon by plaintiffs is for "all other structural shapes of iron or steel." The record before us is devoid of any evidence to indicate, as is required if the articles are to be so classified, that they are designed to give the greatest strength with the least use of material. *The Frost Railway Supply Co.* v. *United States*, 39 C.C.P.A. (Customs) 90, C.A.D 469. It is clear that the claim of plaintiffs for classification of said articles as structural shapes, being unsupported, must be overruled.

Judgment will be entered in conformity with the views above expressed.