(C. D. 150)

ANDRE DEBRIE, INC., OF AMERICA *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 24, 1939)

*Strauss & Hedges* (*Howard Carter* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation consisting of machines for splicing motion-picture films. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said mechanisms are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as machines not specially provided for.

A photograph of the machine in question was admitted in evidence as Exhibit 1, and a piece of film spliced by said device was admitted in evidence as Illustrative Exhibit A.

In addition to the exhibits, the plaintiff submitted the testimony of two witnesses. No evidence was offered by the Government.

The first witness, Alice J. Buisson, a secretary in the employ of the plaintiff corporation, identified Exhibit 1 as an accurate photograph of one of the devices in question, and stated that the others were identical.

The second witness, Henry A. Fluchere, demonstrated in open court the operation of one of these so-called splicing machines. He took two disconnected pieces of film and placed one on top of the lower right plate on the right side of the machine with the perforations going through the registration pin. The upper right plate was then brought down clamping the lower and upper right plates together by means of a catch actuated by a spring. The unit, composed of the upper and lower right plates locked in position, was then lifted automatically by means of a spring so that it was in a tilted position. The other piece of film was placed on top of the lower left plate on the left side of the machine with the perforations also going through the registra-

tion pin. Then the upper left plate was brought down, thus clamping the other piece of film in position. When moving the left upper plate from the up, or released, position to the down, or clamping, position, there is a lateral motion of this plate from left to right, which is caused by an eccentric cam. This lateral motion is necessary in order to give the operator sufficient room within which to work. The scraper, which accompanies each machine, was then used to scrape the emulsion from that portion of the film which protruded from the left plates, and cement was applied to the scraped portion. The right side of the machine was then brought down into the same plane, and the lower right plate formed a cutting edge which cut the film to the proper length and pressed the two sections of the film together. The contact was maintained for a moment and then the right upper plate was released by pushing the lever head or button which appears at the right front of the machine. The piece of film so spliced was received in evidence and marked Illustrative Exhibit A.

The witness further testified that there is an electric cable connected with a red bulb located behind a green screen; that the purpose of this light and screen is to furnish illumination for examination of the film before and after splicing, but that this light and screen are never used because they are prohibited by law in New York City.

It is evident from this record that the electric cable and bulb are not essential features of the film-splicing mechanism at bar, and therefore the device is not classifiable as an article having as an essential feature an electrical element or device, within the meaning of paragraph 353 of the Tariff Act of 1930.

From the entire record, however, we are convinced that the so-called splicing mechanisms constituting the imported merchandise at bar are mechanical contrivances for utilizing and applying energy or force. They are therefore machines in the tariff sense, as that term is defined in *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537.

Not being *eo nomine* provided for, the imported merchandise must be held to be a machine not specially provided for within the meaning of said paragraph 372, and as such properly dutiable at the rate of 27½ per centum ad valorem, as alleged by the plaintiff. That claim is therefore sustained, but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.