(C. D. 614)

BACHARACH INDUSTRIAL INSTRUMENT CO. *v.* UNITED STATES

## United States Customs Court, Second Division

(Decided April 15, 1942)

*Barnes, Richardson & Colburn (J. Bradley Colburn* of counsel) for the plaintiff. *Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett* and *Joseph A. Howard, Jr.*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation of so-called pressure indicators. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as machines or parts thereof not specially provided for; or, alternatively, at the rate of 40 per centum ad valorem under paragraph 360 of said act as scientific or laboratory instruments.

The plaintiff offered in evidence the testimony of two witnesses. The first, Louis L. Vayda, president of the plaintiff-corporation, who testified that the article which was admitted in evidence as illustrative exhibit A represented the imported merchandise at bar, except that the case, the scale or ruler, the spring, and the roll of paper were not included in the importation. The witness then proceeded to testify in part as follows:

Q. Have you seen these indicators, such as Exhibit A used?—A. In the field, I have.

\*      \*      \*      \*      \*      \*      \*

Q. Over what period of time?—A. For the past 15 years.

Q. How are these used? For what purpose are these used?—A. They are used to measure and record the cyclical pressure.

Q. Now, will you take Exhibit A and explain to the Court the respective parts of the mechanism, being careful as you do so, and identify by name each respective part? \* \* \*—A. \* \* \* The indicator has five functional parts, the cylinder, the piston, the pencil mechanism, the spring, and the card drum. The cylinder is screwed into the part called the body, on which the manufacturer's name is stamped, and the piston is fastened to the piston rod which passes through the pedestal on top of which is mounted the spring. The piston rod is fastened to the spring by a nut located on top of the piston rod. The pencil mechanism is also connected to the piston rod by means of a small shaft that passes through the piston mechanism and also the rod. The drum is located on the other side of the frame.

Judge DALLINGER. That is the one that has the white paper?—A. That is the one that receives the card. The drum is rotatable. Now briefly stated, the

pressure in the engine cylinder is utilized to cause an up and down motion of the pencil mechanism. This up and down motion is controlled by the spring. At the same time, the card drum is rotated back and forth. The table on which the pencil mechanism is mounted is rotated to bring the pencil point in contact with the card drum and a pattern is then drawn on the drum from which the operator can determine whether his engine is operating safely and efficiently.

Q. On what type of engine are they used?—A. These are used mostly on Diesel engines.

Q. And in actual use, how are they fixed or otherwise used?—A. There is a hole provided in the top of the engine cylinder into which is screwed a valve. The indicator is fastened to the valve by means of a union nut located on the bottom of the indicator frame.

By Judge DALLINGER.

Q. Do I understand that Diesel engines are so constructed that they have a place where this indicator, which you hold in your hand, is attached?—A. Yes.

\* \* \* \* \* \* \*

Q. What makes that instrument that you hold in your hand operate when it is attached to the engine?—A. The pressure in the cylinder.

By Mr. COLBURN.

\* \* \* \* \* \* \*

Q. That is to say that the cylinder pressure of the Diesel engine is exerted on the piston rod, forming a part of the indicator at bar, causing that piston rod to move up and down?—A. That is right.

Q. Controlled by a spring, that action is in turn transmitted through the indicator arm and then upon the paper; is that your explanation?

\* \* \* \* \* \* \*

A. Yes, by noting the compression pressure, the operator can tell whether the valves may be leaking or whether the piston rings need replacement. Also, whether the engine is in balance. An engine in disbalance will vibrate severely and vibration may cause crankshaft breakage. The operator can also tell from the pattern of the card about the correctness of the fuel injection into the engine. Incorrect fuel injection will cause loss of fuel, smoke, oil contamination, and carbonization which will create wear.

Q. Based upon those, you consider the instrument a necessary part of the efficient and safe operation of the type of engine on which it is used?—A. It is a necessary part.

On cross-examination the witness testified in part as follows:

X Q. Standing alone as I show you illustrative Exhibit A, can that article move or operate in and of itself?—A. No, it can not.

X Q. It must be attached to a valve of an engine, is that your statement?—A. Yes.

X Q. And then it is necessary to move some lever in this article in order to make it operate after attachment to the engine?—A. Yes.

At this juncture a sample of the lever referred to was admitted in evidence as defendant's exhibit A-1. The witness proceeded to testify in part as follows:

X Q. It is your statement, as I understand it, Mr. Witness, that after this article is attached to a valve of an engine it is still necessary for an operator to

move the switch marked Exhibit A–1 before it operates. Is that right?—A. Lever A–1, yes.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. Does the article itself utilize any of the energy or force in the engine other than to record the pressure?—A. No.

X Q. Does the article itself modify or apply any of the energy or force of the engine other than to record the pressure?—A. None, other than to record.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. \* \* \* after arrival in this country, before the article, Exhibit A, can be used, it is necessary to determine what pressure is expected of the engine on which it is to be used before you can ascertain what size spring to be attached?—A. That is correct.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. Then, is it your statement that this article, the ultimate purpose of this article, is to check on and examine the engine?—A. The condition of the engine in the cylinder.

X Q. Now the engine would run without the attachment of the article before the Court?—A. Yes.

X Q. It would perform all its ordinary functions without the attachment of the article now before the Court?—A. A new engine would.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. The engine will run without it?—A. Yes.

X Q. And will perform all the duties without this article that it would perform with the article attached?—A. All the duties that it is capable of performing at that time.

X Q. Would it perform them as efficiently?—A. It may not.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. Mr. Witness, I show you a circular bearing the name of Bacharach Industrial Instrument Company, entitled, "Engine Pressure Indicators" and ask you if you are familiar with that, and if that is issued by your company?—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

A. I am familiar with it and it is issued by our company.

X Q. Does it cover the indicator now before the Court?—A. Yes.

The plaintiff's second witness, Rudolf Ulrich, vice president of the plaintiff-corporation and a qualified mechanical engineer, after corroborating the testimony of the previous witness as to the operation of the instant pressure indicators, testified in part as follows:

Q. Now, Mr. Ulrich, based upon the statements you have just made, is an indicator such as illustrative Exhibit A a necessary part of the engine on which it is used?—A. It is necessary, to operate the engine safely and efficiently.

Q. In your opinion, based upon your experience and training, is Exhibit A a machine?—A. Yes, sir. It is a mechanism which contains moving parts such as a piston working in the cylinder, and it utilizes force from two distinctly separate sources, the pressure force from the engine cylinder and the force of the hand that pulls the cord wound around the drum.

On cross-examination the witness testified in part as follows:

X Q. Can the engine run without the indicator being attached?—A. Yes.

X Q. Can the indicator be used on any engine without first attaching a spring which is not included in this Exhibit numbered A?—A. It can not.

X Q. And the springs are attached after importation?—A. Before they are used on the engine after arrival.

X Q. Before the instrument is shipped to a customer?—A. Yes.

By Judge DALLINGER.

Q. Do you attach that spring according to specifications given by the customer, depending upon the size of the engine to be tested?—A. Yes, sir.

\*      \*      \*      \*      \*      \*      \*

By Mrs. BENNETT.

X Q. Do I understand your statement that these indicators are used on the engines for the purpose of testing all the operations which you described?—A. They are used to detect the defects which I described.

X Q. And they are put on the engine periodically for testing purposes?—A. We recommend periodical use of the instrument.

X Q. How often do you recommend that the indicator be attached to the engine?—A. We recommend it to be used every 300 engine hours, which is on an average of every 2 weeks.

Upon this record we find the following facts:

1. That the imported merchandise consists of so-called pressure indicators, which, from time to time, are attached to Diesel engines for the purpose of measuring and recording cyclical pressure.

2. That each of said indicators has five functional parts, a cylinder, a piston, a pencil mechanism, a spring, and a drum.

3. That the pressure in the engine cylinder is utilized to cause an up-and-down motion of the pencil mechanism which motion is controlled by the spring and at the same time a card drum is rotating back and forth.

4. That on the top of the engine cylinder a hole is provided into which is screwed a valve. The indicator is fastened to the valve by means of a union nut located at the bottom of the indicator or frame.

5. That the purpose of attaching one of these indicators to a Diesel engine is to test the engine as to its efficiency and safe operation.

6. That a Diesel engine without the periodic testing by one of these indicators will perform the functions for which it was designed, although not so efficiently.

Upon this record we hold as a matter of law that the said so-called pressure indicators are not necessary and essential parts of Diesel engines within the meaning of paragraph 372 of the Tariff Act of 1930. *United States* v. *Willoughby Camera Stores,* 21 C. C. P. A. 322, T. D. 46851. On the other hand, we hold as a matter of law that said pressure indicators in and of themselves are mechanical contrivances for utilizing and applying energy or force for the transmission of motion, and as such are properly dutiable at the rate of 27½ per centum ad valorem under said paragraph 372 as machines, as that term has been defined in *Simon, Buhler & Baumann (Inc.)* v. *United States,* 8 Ct.

Cust. Appls. 273, T. D. 37537, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.