(C. D. 800)

HOFFMANN-LAROCHE, INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided July 28, 1943)

*Jordan & Klingaman (Jacob L. Klingaman* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: Merchandise, which was found by the collector of customs at the port of New York to be in chief value of metal and not specially provided for, was assessed with duty accordingly at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930, plus a tax of ¾ of 1 cent per pound on the copper contained therein in excess of 4 per centum, under section 601(c) (7), the Revenue Act of 1932. The copper assessment is not challenged.

Plaintiff claims that said merchandise is properly dutiable at the rate of 27½ per centum ad valorem under the provision in paragraph 372 of said act for "machines * * * not specially provided for" or for "parts" thereof. Other claims are invoked by the protest, but it is clear from the opening statement of counsel for the plaintiff at the trial, and from their brief filed herein, that the only claim relied upon is that alleged under paragraph 372.

The facts in the case are to be drawn from the testimony of the sole witness who appeared herein for the plaintiff. He testified that he had practiced his profession as a mechanical engineer since 1932, and for the past 6½ years had been employed by Hoffmann-LaRoche, Inc., the importers of the merchandise in question, and was responsible for the installation of the apparatus in its plant at Nutley, N. J.

The merchandise consists of a so-called evaporator set which, in conjunction with certain domestic parts, constitutes a complete unit. More specifically, the unit consists of several kettles or stills, together with vacuum pumps, condensator pumps, compressors, condensers, crystallizers, valves, and connecting pipes. Some of the kettles are equipped with agitators, belt-driven; others are not. When set up and in operation, the evaporator set, as stated by the witness, is used "for the purpose of synthesizing a vitamin product," or "to concentrate a liquid from a large to a small volume for the purpose of crystallization" in the ultimate production of vitamins. When in use the necessary motivating force required to operate the mechanism is supplied by electric power, although other power may be employed

interchangeably without substantial alterations being made in the apparatus.

Although the materials used in this process are fed into the mechanism by hand power, it appears, from the testimony, that "between pieces of apparatus within this unit they are fed by power"; that they "may be blown by compressed air, and in other cases it may be pulled in by means of vacuum." This is further illuminated by the following testimony:

Q. Is there any mechanical contrivance connected with this evaporator set as now set up?—A. Yes.

Q. Which helps to move these materials?—A. Yes, there is the vacuum pump used to maintain the vacuum on the evaporator unit. Also a condensator pump to remove the condensate.

Q. Are the materials moved, or caused to be moved within that one unit of which the evaporator set is a part, by hand power or is it automatic once the materials are started and the power from the belt applied?—A. There are places where there must be a hand transfer, in the case of a solid.

Q. Now, is there a transfer within this unit of which the evaporator set is a part, that one step?—A. In the evaporator itself I assume you mean?

Q. No. You say that it forms a part of a series of pipes and kettles, and so on, which constitute one step in the manufacture of this vitamin. Now, once you have fed the materials into this kettle with an agitator in it, from thereon they transfer these materials within that unit as far as the evaporator set; is that accomplished by hand or by power?—A. That is accomplished by power.

Q. Is it automatic? To what extent is it, if any? What does the operator do?—A. Once the kettle is loaded with the necessary chemicals and the power is applied, the operation of the step is automatic. Of course, at the beginning of the operation the operator must control steam valves to establish the proper temperature, and in some cases he may have to regulate the rate of flow into the kettle by means of liquid valves. Once the rates of flow are established, however, the operation is automatic from that point on.

When the operation in a particular step is completed, the operator must open drain valves and operate mechanical pump controls, in order to transfer the batch to the next kettle for the next operation.

Judge DALLINGER. Is the evaporator the last step after it has gone through the kettles?

The WITNESS. No, it is not.

By Mr. KLINGAMAN:

Q. Where does it go after it comes out of this evaporator set?—A. After the evaporator it goes into what we call a crystallizer.

Q. And that is still within the first step?—A. That is right.

Q. And a crystallizer is a part of that mechanism, too?—A. That is right.

At this point the witness produced a so-called "flow-sheet" or drawing designed to show the set up of the unit above described. This was received in evidence and marked plaintiff's illustrative exhibit A.

The particular importation was designed specially for use by Hoffman-LaRoche, Inc. In its use the evaporator set performs one important step in the production of the desired vitamins. Five steps

are required, each being done in similar contrivances, that is, a series of kettles, pipes, agitators, pumps, etc.

It is evident from the foregoing recital of the facts concerning the importation that the various parts, when combined with necessary articles of domestic manufacture, constitute a complete unit for the production of vitamins.

Electricity or steam (in this case electricity) is utilized to supply the requisite power to enable these evaporator sets to function properly. While steam is required to cause the liquid contained in the kettles or stills to evaporate and condensate, power must also be applied to the belts and pulleys which operate the mechanical pump controls and the agitators in the kettles equipped with them. Consequently, it would seem that the composite whole, comprising all the various parts described by the witness, is a machine within the reasoning of our appellate court in certain related cases which will be discussed below.

In an early case, a gas condenser, with its equipment such as pipe fittings, coils, valves, pan, and malleable-iron castings therefor, used for the purpose of converting gases into fluids, was held to be "*at least*" a part of an ammonia gas condensing appliance, and that once connected with the compressor constituted a complete machine. *United States* v. *Sheldon & Co.*, 15 Ct. Cust. Appls. 308, T. D. 42484. In the course of its opinion that court observed:

* * *. To make the condenser effective requires the action of a compressor "to shove the gases through" and the complete machine "is really a condenser plus a compressor." The condenser is complete, but it can not be used by itself and is not a complete machine. To make a complete machine the condenser must be connected with a compressor. The condenser is designed for condensing ammonia, but to make it effective the action of a compressor and the action of water over the condenser is needed. The condenser is an ammonia condenser which will not "work on steam" and can not be connected with all machines requiring a condenser.

If the ammonia gas condensers with their fittings and appurtenances above described are machines, or at least parts thereof, then *a fortiori* the same must be held to be equally true of the present evaporators and their fittings and appurtenances.

In another case merchandise consisting of a steam boiler, a large vat containing a metal coil and a lead, to which were attached regulating valves extending from the boiler to the coil in the vat, used for sterilizing flower bulbs, was held to be properly dutiable as a machine. *United States* v. *Van Bourgondien Bros.*, 16 Ct. Cust. Appls. 420, T. D. 43135. In its opinion in that case the court said:

* * *. When the apparatus is in operation, the vat contains water and the flower bulbs to be sterilized. Steam generated in the boiler passes through the lead and the regulating valves to the coil in the vat and heats the water. The

flow of steam is controlled by the four regulating valves, and, in this manner, the temperature of the water is regulated and controlled.

Based upon the stated facts, the court concluded:

We are of opinion that the article in question comes within the definition of a machine. It not only generates energy, but it modifies, utilizes, and applies it.

And so, in the case at bar, the steam "not only generates energy, but it modifies, utilizes, and applies it." Moreover, electric power drives a pulley and belt which operate the agitators in the kettles. In addition, vacuum pumps are employed to convey the liquids from one part to another.

In a later case, metal valves and valve extensions, specially designed for use with other parts in the production of synthetic anhydrous ammonia, were held to be dutiable as "parts" of a machine. *United States* v. *G. W. Sheldon & Co.*, 21 C. C. P. A. (Customs) 392, T. D. 46913. The court in its opinion described the machine as having a base of between 100 and 150 feet, together with pipes, valves, a converter and compressor, the motivating power being supplied by an electric motor.

Again, certain merchandise comprising, when assembled, a complete anhydrous ammonia plant, composed of compressors, heaters, tanks, condensers, and refrigerators, used in the production of liquid anhydrous ammonia by a process of synthesis, was held to be dutiable under the provision for "all other machines." *John A. Steer & Co.* v. *United States*, 24 C. C. P. A. (Customs) 293, T. D. 48737.

The last two cases are relied upon by plaintiff.

It is true that the court in the *Steer* case, *supra*, was concerned primarily with the question whether the apparatus referred to was dutiable as a machine under paragraph 372, or as an article having as an essential feature an electrical element or device, and as such dutiable under paragraph 353 of the Tariff Act of 1930. Classification under the latter paragraph was denied because the motive power as in the case at bar, although electrical, could be equally well supplied by steam or other force.

Furthermore, the court was of the opinion that the electrical heating element by which the synthesis of the gases was inaugurated was not sufficiently essential to bring the apparatus within the provisions of paragraph 353, for the reason that the continuance of the operation of the plant did not at all depend upon that feature. It appeared that "As soon as the reaction starts, these electrical heaters are turned off and are no longer used except when it is again necessary to start the process." See also *United States* v. *Moore & McCormack Co.*, 15 Ct. Cust. Appls. 322, T. D. 42489, wherein certain marine surface condensers were held to be at least parts of machines under paragraph 372 of the Tariff Act of 1922; and *United States* v. *Frank P. Dow Co., Inc.*, 18 C. C. P. A. (Customs) 53, T. D. 44026, relating to tubular-

steel vessels or tanks known as dephlegmators. These were connected with pumps, heaters, and condensers in the manufacture of gasoline from crude oil and were employed in direct connection with machines used in the refining process. They were held to be dutiable as parts of machines under paragraph 372 of the Tariff Act of 1922.

It is our opinion that in harmony with the cases above cited the merchandise in controversy is properly classifiable under the provision for machines or parts thereof not specially provided for, and dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930.

In support of the collector's classification, the Government, in its brief, relies upon the case of *United States v. J. E. Bernard & Co., Inc.*, 28 C. C. P. A. (Customs) 182, C. A. D. 142, and *American Bluefriesveem, Inc.*, Abstract 14045, 58 Treas. Dec. 1151.

The *Bernard* case, *supra*, related to filters, each consisting of a frame, filter plates, and filter sheets, for use in the clarification of certain liquids. It appears from the opinion of the court that the filters were excluded from classification as machines because they were "devices which possess no mechanically operating features." That case is therefore clearly distinguishable.

An examination of the opinion of this court in the *American Bluefriesveem, Inc.*, case, *supra*, and of the record therein, discloses that the merchandise there in controversy consisted of certain parts of a so-called "Neckar System," comprising among other things, a sterilizer, heater, reaction tank, pumps, etc., all properly connected and employed in the preparation of water for use in steam boilers of power plants and for the prevention of scaling in boilers by the elimination of sludge and other precipitates that occur when water is heated under pressure. In its opinion this court said in part:

We can understand that such a diversified unit might well be considered "machinery"; that the pumps might be machines; but we hardly believe that the whole could be regarded as constituting a single machine. At best, it would be a unit composed in part of pumps which may be machines. * * *.

If the conclusion reached by us in the instant case be deemed contrary to the views expressed in the *Bluefriesveem* case, *supra*, we are of the opinion that that case is not in harmony with the weight of judicial authority which we have discussed above.

For the reasons stated, the decision of the collector is reversed and the claim of the plaintiff that the merchandise is dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as machines or parts thereof not specially provided for is sustained, all other claims being overruled.

Judgment will be rendered accordingly.