(C. D. 1172)

F. W. MYERS & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 12, 1949)

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* of counsel) for the plaintiff. *David N. Edelstein*, Assistant Attorney General (*William J. Vitale* and *Arthur R. Martoccia*, special attorneys), for the defendant.

Before LAWRENCE, and TILSON, Judges; RAO, J., not participating

LAWRENCE, Judge: . Two protests have been consolidated for trial and decision.

The merchandise consists of metal cylinders described on the invoices as vacuum driers. They were classified by the collector of customs as articles or wares not specially provided for, composed wholly or in chief value of base metal, as provided in paragraph 397 of the Tariff Act of 1930, and duty was assessed accordingly at the rate of 45 per centum ad valorem.

Plaintiff claims in its protests that the articles should be classified as machines or parts thereof, not specially provided for, and subjected to duty at the rate of 27½ per centum ad valorem as provided in paragraph 372 of said act.

A photograph marked in evidence as illustrative exhibit A depicts the imported article in the condition as installed at the plant of the importer at Rouses Point, N. Y.

Plaintiff introduced the testimony of a representative of the importing concern and from his testimony, together with the photograph above referred to, the importation may be described as follows: The vacuum drier as a unit consists of an outer shell or cylinder about 12 inches in diameter and 2 feet high containing an inner cylinder which is removable. The bottom of the outer cylinder is closed with the exception of an outlet fitted with a rubber hose leading to a vacuum pump. The witness testified that—

The top is opened except when the inner cylinder is fitted into the unit. We have the outer shell and the inner cylinder which is sealed at the bottom and fits down inside of the outer shell. This inner cylinder is sealed to the top of the outer shell with a rubber gasket, and in the inner cylinder is put a solution of dry ice and alcohol that brings a temperature of approximately sixty degrees below zero, Centigrade * * *.

Encircling the outer cylinder, when completed for use in this country, are five rows of cannulas to which vials containing the frozen solution are fitted and the interior of the outer shell is then "subjected to a very high vacuum."

Further the witness testified—

The cannulas fits [sic] over a tube or piece of pipe that is attached to the unit. The material in the vial is subjected to very high vacuum and remains at all

times in the frozen state; that is, the water remaining in the vial remains in the frozen state, and gradually passes off from the frozen into the vapor state, becoming a liquid in between. When this vapor hits the wall of the inner cylinder which is at a temperature of approximately sixty degrees below zero, Centigrade, it condenses and remains there. After the completion of the process, no water remains in the vial at all and vial assumes the appearance of Illustrative Exhibit C.

Illustrative exhibit B was received in evidence as an example of a solution before being subjected to the operation above described. Illustrative exhibit C was admitted in evidence to represent the same solution after it had been dehydrated, and which the witness described as a pharmaceutical or medicinal preparation.

From an examination of the photograph, illustrative exhibit A, it appears that the cylinders stand upon a circular metal base, which however does not form a part of the importation. Neither were the vials nor the rubber cannulas imported. The vacuum drier, as above described, rests upon what appears to be a wooden table under which is a "standard high vacuum pump" motivated by an electric motor which is connected to the pump by a belt.

It is the combination of cylinders, above described, without any of the other attachments, which plaintiff contends should be classified as machines or parts thereof, not specially provided for, and in support of that contention insists that "The case at bar presents a situation exactly comparable to that decided by this Court in *Hoffmann-LaRoche, Inc.* v. *U. S.*, C. D. 800."

A careful examination of the *Hoffmann* case, *supra* (11 Cust. Ct. 82), will disclose that it is clearly distinguishable factually from the case at bar.

The importation in the *Hoffmann* case consisted of a series of stills or kettles, some of which had movable parts. It appears from our opinion in that case that when the imported kettles were connected with certain domestic parts they became what was recognized as a complete evaporator set for use in the production of vitamins. It was further shown that the evaporator set was equipped with vacuum pumps motivated by electric power. However, the pumps were not in themselves a part of the composite whole which constituted the machine in that case but were separate entities.

By analogous reasoning the engine or motor which is essential to the operation of the vacuum drier in this case is a machine in itself, separate and apart from the drier. Moreover, the vacuum drier differs in principle from the evaporator set in that the latter had movable parts whereas the vacuum drier has not. In other words, whereas the evaporator set possessed elements which together comprise a machine, the vacuum drier does not. Note *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, wherein the court indicated that a machine is a mechanical

contrivance for utilizing, applying, or modifying energy or force, or for the transmission of motion. This general definition has been accepted and applied with certain minor modifications in numerous subsequent cases. See *United States* v. *Klingerit, Inc.*, 17 C. C. P. A. (Customs) 472, T. D. 43931; *United States* v. *Guth Stern & Co., Inc.*, 21 C. C. P. A. (Customs) 246, T. D. 46777; *United States* v. *Dyson Shipping Co., Inc., et al.*, 29 C. C. P. A. (Customs) 148, C. A. D. 184, and cases therein cited.

We are clearly of the opinion that the vacuum driers or cylinders here under consideration do not utilize, apply, or modify energy or force, or transmit motion, within the scope of the foregoing definition.

Worthy of note in connection with the controversy before us is the case of *Columbia Shipbuilding Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 281, T. D. 39085. The merchandise involved in that case consisted of certain steam engines and Howden fans or blowers, which were designed to be operated together for supplying a forced draft to the boilers of vessels. It was classified as entireties as articles in chief value of metal and was claimed to be dutiable separately, the engines as steam engines in paragraph 165 of the Tariff Act of 1913 and the fans as articles in chief value of metal in paragraph 167 of said act. The protest was overruled in the lower court. On appeal, however, the judgment below was modified, being reversed insofar as it related to the assessment of the steam engines in question, and being otherwise affirmed. In its opinion, the appellate court stated—

With this description of the articles before us, we conclude that the engines and fans as imported were not entireties, notwithstanding the fact that they were designed to be operated together; for when the articles are installed for use each retains its own name and essential character, and neither one becomes in fact a part of the other. Nor do they then merge or unite so as to form together a new or distinct article having a different name or character. When in use the engine simply performs the function of an engine and retains its name as such, and the fan performs the function of a fan only and retains its separate name also.

Likewise may it be said of the vacuum driers here in controversy that notwithstanding that the driers, vacuum pumps, and electric motors are used together "each retains its own name and essential character, and neither one becomes in fact a part of the other. Nor do they then merge or unite so as to form together a new or distinct article having a different name or character." The imported cylinders in themselves are not machines, nor may they be considered to be parts of machines, in view of the *Columbia* and the *Simon, Buhler & Baumann* cases, *supra*.

We consider that the case before us is controlled by the decision of the appellate court in *United States* v. *J. E. Bernard & Co., Inc.*, 28 C. C. P. A. (Customs) 182, C. A. D. 142. It was there held that certain filters, being devices which possessed no mechanically operating

features, and used for the conveyance of liquids to and forced through them by an independent mechanism—a pump—which might readily be used for pumping in other connections, were not subject to classification as machines or parts thereof in paragraph 372, *supra*.

In view of the foregoing considerations, the claim of the plaintiff herein is overruled, and the action of the collector of customs is affirmed.

Judgment will issue accordingly.