(C. D. 976)

STANDARD RAILWAY EQUIPMENT MFG. CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 16, 1946)

*Jerome G. Clifford* (*George W. Israel* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Richard F. Weeks* and *Arthur R. Martoccia,* special attorneys), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: We are here confronted with the question whether certain articles invoiced as "side flues" are dutiable at 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as articles, not specially provided for, composed in chief value of metal, as classified by the collector of customs, or dutiable at 15 per centum ad valorem, as claimed by the importer, under the provision for structural shapes in paragraph 312, of said act, which, as modified by the trade agreement with Belgium, effective May 1, 1935, 67 Treas. Dec. 470, T. D. 47600, reads:

Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, and deck and bulb beams, together with all other structural shapes of iron or steel; any of the foregoing machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting   *   *   *.

All other claims invoked by the protest of the importer were abandoned at the trial.

The testimony of the only witness herein discloses that he is the works engineer of the plaintiff, a manufacturer of railway freight cars of all kinds; that he has practiced his profession since 1905, having been formerly employed by the American Roller Co. and as a steel car designer for the Standard Steel Car Co. of Butler, Pa.; that the blueprint (exhibit 1) and the photostat entitled "General Arrangement No. 1 E 83" (exhibit 2) indicate how the imported side flues were incorporated in refrigerator cars built for the Fruit Growers Express Co.

The witness stated that the imported articles are called "side flues," partially because they are incorporated in the sides of refrigerator cars. He explained that produce, or whatever happens to be loaded in the car, is deposited on racks which are off the floor so as to form a flue in the bottom of the car; that the designs represented herein by exhibits 1 and 2 are double and single flues, more or less pan-shaped, approximately 8 feet long and 20 inches wide, and are composed of 20-gauge steel; that they are trimmed by having the irregular edges sheared off; and that holes are then punched therein for fastening to the superstructure of the car, which may be done by screws or rivets, in this case it being deemed more convenient to use screws.

It is not disputed that the side flues in their condition as imported are advanced beyond hammering, rolling, or casting, and that they are made of steel.

Further, the testimony shows that these flues being incorporated into the side of the car form part of the car structure, serving as stress-carrying members of the superstructure. The witness said:

In metal car construction there is a side plate and a side sill. There is a post that goes from the side sill up to the side plate, forming a right angle, and without some sort of bracing in it the thing would go out of shape, and so ordinarily in car construction they would put what they call a diagonal brace in which would strengthen the superstructure, but in this particular case we can't have a diagonal brace in the car because it would defeat our purpose, so we use this flue and fasten it to the posts and sills, and in that way it eliminates the diagonal brace.

Q. Now, you have just testified, if I understand you correctly, that if the imported merchandise were not placed in the car in the way you have described it would have been necessary to put in diagonal braces to carry the stress and the load?—A. Yes, sir.

Q. Now, therefore, do you consider it to be an integral part of the structure of the car?—A. Yes, sir.

The witness testified that in most structural shapes the commonly accepted test is that the article must be designed to carry a maximum load with a minimum amount of material; that that test applied to the present merchandise. the 20-gauge steel therein having sufficient strength to resist tensions and stresses "all ways in all directions"; that the imported flues serve as a reinforcement of the car and take up

the stress, and that without them the car would collapse. He said that these 20-gauge steel side flues are designed to sustain or support as much weight as a girder or a post, adding—

Yes; that is structurally designed to carry a certain load, and then all corresponding parts must be designed to carry their portion of the load.

The testimony further discloses that the primary purpose of these flues is to serve as part of the reinforcement in the structure of the car; that they are so shaped that they may also serve to carry off the excess brine, supply an air passage, and hold the insulation—factors which are incidental to the process of car refrigeration.

The witness was positive in his view that these flues are definitely part of the structure of the cars; that their primary purpose is to support weights, overcome stresses and strains, and take the place of bracing members.

Although the articles before us perform functions other than those of a structural member, we are of the opinion that the facts of record herein satisfactorily establish the importer's contention that they are properly within the purview of the provision in the trade agreement with Belgium, *supra*, for "all other structural shapes of iron or steel * * * advanced beyond hammering, rolling, or casting." The mere fact that these side flues are so shaped and adjusted that they serve purposes additional to their primary use, does not rob them of their appropriate classification, as above indicated.

The doctrine of chief or exclusive use does not control us in determining whether the merchandise is in fact a structural shape. *Judson Freight Forwarding Co.* v. *United States*, 20 C. C. P. A. (Customs) 229, T. D. 46038. In that case the merchandise consisted of steel angles, some 2 x 2 x $\frac{3}{16}$ inches imported in 30-foot lengths, and others 2 x 2 x $\frac{1}{4}$ inches imported in 20-foot lengths. It appeared that they had the capacity to sustain relatively heavy weights and resist great tension; that they were designed to be, and were used, as "structural shapes in building derricks and other structures" requiring light sections. They were accordingly held to be properly classifiable as structural shapes under paragraph 312 of the Tariff Act of 1922, which, so far as here material, corresponds to paragraph 312 of the act of 1930.

In an elaborate opinion in that case, the court quoted from the Summary of Tariff Information, 1920 and 1921, prepared by the Tariff Commission, and reviewed its decisions in the cases of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, and *United States* v. *Henry L. Exstein Co. (Inc.)*, 16 Ct. Cust. Appls. 328, T. D. 43079, and drew particular attention to the following definition in Webster's New International Dictionary:

structural shape. *Engin. & Arch.* The shape of a member especially adapted to structural purposes, esp. in giving the greatest strength with the least material. Hence, *Colloq.*, any steel or iron member of such shape, as channel irons, I beams, T beams, etc., or, sometimes, a column, girder, etc., built up with such members.

Accordingly, the court was of the opinion—

* * * that the Congress did not intend to limit the term "structural shapes" to such shapes of iron and steel as were used only in large structures, but that it intended to include therein all structural shapes of iron or steel having the "capacity to sustain [relatively] heavy weights or to resist great tension or both,": and designed for the utilization of such capacity, to be used as such shapes, and suitable for such use in buildings, bridges, ships, cars, etc., requiring either heavy or light sections, or both, and also in certain "other articles *requiring light sections*" only. [Italics quoted.]

The views expressed by the court in the *Judson Freight Forwarding Co.* case, *supra*, were referred to and reaffirmed in *United States* v. *Julius Blum & Co., Inc.*, 26 C. C. P. A. (Customs) 168, C. A. D. 12.

We think the underlying principles of those cases, and others cited therein, compel the conclusion that, upon. the record before us, the side flues in controversy are properly classifiable as structural shapes of steel advanced beyond hammering, rolling, or casting, within the meaning of paragraph 312 of the Tariff Act of 1930, as modified by the trade agreement with Belgium, *supra*, and properly dutiable thereunder at the rate of 15 per centum ad valorem.

Those cases, we believe, also dispose of the contention of defendant that said paragraph 312 must be so construed as to include only such structural shapes as are *ejusdem generis* with the articles designated by name in the paragraph. In the cited cases the appellate court stressed the fact that it was the purpose of the Congress to include within the scope of the paragraph light, as well as heavy, structural shapes but that Congress clearly intended to include in paragraph 312 in fact "all structural shapes of iron or steel having the 'capacity to sustain [relatively] heavy weights or to resist great tension or both,' * * * and suitable for such use in * * * cars."

The foregoing considerations lead us to the conclusion that upon the facts of record and the law applicable thereto the claim of the plaintiff alleged under paragraph 312 of the Tariff Act of 1930, as modified by the trade agreement with Belgium, *supra*, should be, and the same hereby is, sustained, and the decision of the collector assessing the involved merchandise under paragraph 397 of said act, is reversed. All other claims are overruled.

Judgment will be entered accordingly.