BEFORE THE SECOND DIVISION, APRIL 26, 1949

No. 53058.—European Vibraphone Co. v. United States, protest 90391–K (Los Angeles).

TILSON, Judge: The merchandise, the classification of which is here in issue, consists of so-called vibraphones. It was classified as articles in chief value of silver, not specially provided for, and assessed with duty at 50 per centum ad valorem under paragraph 397 of the Tariff Act of 1930, and the trade agreement with the United Kingdom, T. D. 49753. Several claims for lower rates of duty are contained in the protest, but the only one relied upon is that for machines, not specially provided for, under paragraph 372 of the Tariff Act of 1930, at 27½ per centum ad valorem.

A sample of the imported vibraphones is in evidence as exhibit 1, and has had our examination and inspection. A witness testifying for the plaintiff when asked what is exhibit 1, stated:

It is essentially, both from observation and from physical test, your Honor, a type of a tuning fork, whose frequency range would be certainly not less than 300 cycles per second, and I would say not more than a thousand cycles per second.

Further explaining the functions and operation of exhibit 1, the witness when asked:

· Q. Now, Dr. Strait, assuming that Plaintiff's Exhibit 1 was inserted in the ear, and that the sound of the human voice caused the reed to vibrate, what would thereafter happen?

answered as follows:

A. Well, one can estimate what would happen, whether it were in an ear or any other medium. The reed would vibrate as a result of what one calls sympathetic vibrations contained in the voice, that is, the voice frequencies have the same frequency as the reed, and the reed being in contact with the metal container, would transfer those vibrations to the metal container—the metal container in contact with the bones—and the structure of the ear would transfer those vibrations to that structure, and therefore, one will get a transference of the original wave energy, first to the fork, and then from the fork, through the surrounding medium, in the case of the ear, to the entire head, primarily through the bones, which would act like a sounding board for those vibrations.

The witness further stated in effect that exhibit 1, being essentially a tuning fork, would act like one; that exhibit 1 is a mechanical contrivance for utilizing, applying, or modifying energy or force, or for the transmission of motion; and that:

* * * here we have a physical device which receives sound energy, converts it into a mechanical energy of motion of the tines of the fork, which in turn retransmit that energy to any surrounding medium in which it is placed or with which it is in contact. It, therefore, transfers energy.

On cross-examination the witness stated that an air pistol was a machine; that a gun was a machine; and that he would say that a tuning fork may be a machine. The witness finally stated that when he said that a tuning fork in some of its uses was a machine, and that an air pistol was in his opinion a machine, that he used the term "machine" in a scientific sense. "I am trying to stick with the scientific definition of a machine, because that is all I know about."

In support of his contention herein counsel for the plaintiff has cited *United States* v. *Oppleman*, 25 C. C. P. A. 168; *Adlanco* v. *United States*, Abstract 4376; *United States* v. *Janson*, 16 Ct. Cust. Appls. 315; *United States* v. *Van Bourgondien*, T. D. 43135; *United States* v. *Adlanco*, T. D. 46778; *Simon* v. *United States*, 8 Ct. Cust. Appls. 273; and *United States* v. *Bernard*, 30 C. C. P. A. 213.

In our opinion the merchandise involved in the present case is distinguishable from the merchandise in each of the cited cases. In the *Oppleman* case, *supra*, the appellate court said:

The aneroid barometers here involved operate in accordance with mechanical principles. That they are mechanical contrivances, having operating movable parts, such as springs, hairsprings, levers, chains, and diaphragms, without which parts and their coordinate movements the articles would not function, cannot be seriously questioned.

In the first place there is serious doubt that the involved merchandise could be considered as mechanical contrivances under any circumstances, and in the second place, it has no operating movable parts, such as springs, hairsprings, levers, chains, and diaphragms.

The *Adlanco* case, Abstract 4376, involved so-called phonophores, concerning which the court found:

* * * the articles consist of electrical sound receiving and sound amplifying devices used by people with defective hearing and that the mechanism receives. the sound waves of human speech through two microphones in the transmitter, which produces a vibration on the diaphragms of the microphones, which in turn is transformed into electrical energy, and which electrical energy is amplified by the power of an electric battery and transformed again into mechanical energy, entering into the diaphragm of the receiver and being changed into sound vibrations. These vibrations in passing through the mechanism have been made much stronger and therefore are more readily audible.

There are no microphones and no transmitter in the involved merchandise which produce a vibration on the diaphragms of the microphones, which in turn is transformed into electrical energy, and which electrical energy is amplified by the power of an electric battery and transformed again into mechanical energy.

In the *Janson* case, *supra*, the involved merchandise consisted merely of elongated, spoollike, clear glass insulators, each about 3½ inches in length and 1 inch in diameter, with round holes at each end about one-fourth inch in diameter, which in its final conclusion, our appellate court held to be properly classifiable as manufactures of glass, not specially provided for, rather than as parts of machines.

The other cases cited by counsel for the plaintiff are equally distinguishable from the case at bar, and an analysis of those cases is not deemed necessary here.

In our opinion the involved merchandise does not meet any of the requirements of a machine as judicially determined by this and our appellate court. All claims of the plaintiff are therefore overruled and judgment will be rendered in favor of the defendant.