UNITED STATES *v.* IDL MFG. & SALES CORP. (No. 5037)[1]

United States Court of Customs and Patent Appeals, Nov. 17, 1960

---

[1] C.A.D. 756.

18

*George S. Leonard*, Acting Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section, (*Henry J. O'Neill* and *Richard H. Welsh*, trial attorneys, of counsel) for the United States.
*Allerton deC. Tompkins* for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

RICH, Judge, delivered the opinion of the court:

There were imported two models of hand-operated paper punches which simultaneously punch two 6 mm. holes spaced 7 cm. apart. They are inexpensive punches of the type used in offices and were invoiced at prices of $135.50 and $287.00 per thousand. They consist mostly of sheet-metal stampings, each contains two punching dies normally held open by a spring, and the dies are closed to punch holes by the manual operation of a member which acts on the dies as a lever, multiplying the applied force by two in the case of one model and by five in the case of the other. Actuation by hand to punch holes compresses the springs and the dies therefore open automatically when the pressure is released.

The collector classified the punches as manufactures of metal not specially provided for under paragraph 397, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

The importer protested, claiming classification as "machines," not specially provided for, under paragraph 372, as modified by the Torquay Protocol to GATT, 86 Treas. Dec. 121, T.D. 52739. The Customs Court sustained the protest and the Government has appealed.

The total record of the proceedings in the Customs Court occupies but six printed pages. Exhibits representing the merchandise were introduced in evidence and the importer's president explained how they worked and said that they were known as paper punching machines. He was not cross-examined.

The Government has filed a brief and a reply brief urging us to upset the classification approved by the lower court, saying that the question is "strictly one of law" and pointing out that the Customs Court has rendered a decision in this case which is inconsistent with its prior decisions on similar punches in *P. Kuch Co.* v. *United States*, 63 Treas. Dec. 1569, Abstract 24319, and *A. L. Salomon & Co.* v. *United States*, 5 Cust. Ct. 395, Abstract 44729. The importer counters with a later Customs Court decision in *Transatlantic Factors, Inc.* v. *United States*, 7 Cust. Ct. 283, Abstract 46410, wherein paper perforating machines with reinforcing tape applying means were held properly classifiable as machines and cites several other lower court

---

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

decisions wherein other simple mechanisms were held to be "machines."

The gist of the Government's argument, as we understand it, is that these "simple mechanical contrivances" do not "rise to the dignity of a machine;" yet the reply brief concludes with the statement that "appellant has no quarrel with the proposition that the fact that a device is simple does not, for that reason alone, prevent its classification as a machine." This leaves us adrift and, searching for some more concise argument, the best we have been able to find is that in the "primary functioning" of the punches, i.e. the punching of the holes as distinguished from the opening of the dies thereafter, they do not "utilize energy or force" but force "is *applied* to them by hand power." We find this not only unconvincing but incomprehensible, for if force is applied, with the result that holes are punched and return springs are compressed, we are unable to see that energy or force is not "utilized."

Our problem reduces to one of deciding, in the light of the prior decisions of this court, whether it was within the intent of Congress that these paper punches be classed as "machines." Prior decisions of this court and its predecessor on this question, insofar as they have been called to our attention by the parties, are the following: *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537, (metal parts for a brewery mash filter); *United States* v. *Wm. Goldenblum & Co.*, 18 CCPA 367, T.D. 44616, (carpenters' braces both with and without ratchet attachments); *United States* v. *Guth Stern & Co., Inc.*, 21 CCPA 246, T.D. 46777 (manually operated safety-razor blade sharpening device); *United States* v. *Endlein & Schmidt, United Hardware & Tool Corp.*, 22 CCPA 108, T.D. 47082, (hand tallying registers); and *M. Pressner & Co.* v. *United States*, 38 CCPA 8, C.A.D. 431, (slide fasteners).

In its opinion the Customs court said that the paper punches "fall within the accepted judicial determinations of what constitute[s] a machine, *namely, a mechanical contrivance which utilizes, applies, or modifies energy or force, or transmits motion,*" (our emphasis) citing solely the *Simon, Buhler* case, supra. The above italicized passage has been so often, and so erroneously, referred to as this court's "definition" of a machine that it would be well to review just what the *Simon, Buhler* case involved and what it did say. It will also be noted that this case is the source of the Government's argument based on utilization of energy or force.

The imports in the *Simon, Buhler* case were certain channels, grates, frames, plates, posts and end pieces which were to be used to build a brewery mash filter 4 or 5 feet high, 4 or 5 feet wide and 30 feet long. The importer urged classification in paragraph 125 of the 1913 Act which contained an exclusionary clause, reading: "but not made up

into * * * finished machine parts." To meet this contention the government argued that the mash filter to be built was a machine. In disagreeing, Judge Smith, speaking for the Court of Customs Appeals said (p. 277):

The filter which is to be made in part of the castings now under consideration can not be regarded as a mechanical contrivance for utilizing, applying, or modifying energy or force or for the translation of motion, and therefore in no sense can it be properly called a machine (See "machine," "mechanical," "mechanism," Standard Dictionary, Webster's New International Dictionary, and Lockwood's Dictionary of Mechanical Engineering Terms.) In fact, a filter for straining the malt from the malt liquor of the brewer's mask is no more a machine than is the kitchen colander or a box of sand for clearing muddy water. As the filter is not a machine, the castings which are destined to become parts of it are not machine parts * * *.

All the court did was determine that certain essential attributes of machines were lacking in a mash filter so that it could *not* be a machine. Reference to the dictionaries will show that they do not undertake to define machine in terms of the clause so often extracted from the above quotation and dubbed a "definition." Such reference will show, in fact, that the word "machine" does not have a precise definition.

The *Goldenblum* case, supra, was concerned with carpenters' braces which, by virtue of their cranked shafts or "sweeps," provide a mechanical advantage by virtue of leverage in the rotation of bits or drills in the boring or drilling of holes. The so-called "definition" of the *Simon, Buhler* case was urged as justifying their classification as machines (as indeed it would if it were a definition) under paragraph 372 of the 1922 Act and the Customs Court held that they were machines. This court reversed. In its opinion the court, unfortunately we think, said that it had been said "in substance" in the *Simon, Buhler* case "that a machine is a mechanical contrivance for utilizing, applying, or modifying energy or force, or for the transmission of motion." While that may very well be true, it is no more a definition of a machine than it is a definition of a dog to say it is an animal with two eyes, four legs, one tail, fur, toes, and teeth. The statement applies equally to cats and mice. That the court felt the same way in 1931 is clear from what it did in the *Goldenblum* case. It said that to hold the braces to be machines would be to "[reduce] the definition of machines to an absurdity," because then "every tool, no matter how simple, is a machine within that definition." The court was of the opinion then that "lead pencils, penholders, knives, forks, spoons, golf clubs, tennis rackets, baseball bats, screw drivers, hammers, chisels and a multitude of other articles" within the so-called "definition" of *Simon, Buhler* are not "machines." (What it failed to observe was that if the quoted *Simon, Buhler* clause be taken as a definition, then it is an absurdity.) The

court held that the braces were not classifiable as "machines." It then said in conclusion, and again we think unfortunately, "We are of the opinion that the involved articles do not utilize, apply, or modify energy or force, or transmit motion, *within the meaning of the definition of machines* announced by this court in the *Simon, Buhler & Baumann* case, *supra*, and we so hold." [Emphasis ours.] In other words, that so-called definition was not deemed to be determinative of what is a machine and was not to be taken literally in that sense.

In *United States* v. *Guth, Stern & Co., Inc.*, supra, at the very outset of its opinion, the court said:

A careful analysis of this court's opinion in the *Simon, Buhler, & Baumann* case, *supra*, will disclose that the court was not there confronted with the necessity of attempting to lay down any precise and all-inclusive definition of the term "machine" for tariff purposes, nor does the opinion itself purport to do so. It merely recites *certain characteristics of a machine* as that term and certain associated terms are defined in the standard authorities there cited, for the sole purpose of *negativing* the contention there made by the Government that a brewery mash filter was a machine. [Emphasis ours.]

The imported merchandise before the court in that case was a manually operated device for sharpening razor blades. The case went off on legislative ratification of classification of the same kind of device as a machine, the court finding that a decision to that effect had actually been called to the attention of Congress when paragraph 372 of the 1930 Act was before it and that the provision had been reenacted without change.

In *United States* v. *Endlein & Schmidt*, supra, this court approved the Customs Court judgment sustaining a protest and holding hand tally registers properly classified as machines under paragraph 372. The opinion discusses only the alternative classifications which were disapproved and does not discuss the meaning of "machines." Pertinent here is only the description of the devices and the ultimate conclusion that they were machines notwithstanding they were quite simple in nature without any automatic operating structure.

*M. Pressner & Co.* v. *United States*, supra, involved slide fasteners or "zippers." The trial court overruled the protest that they should be classified as machines and this court affirmed. In the opinion the court pointed out. (38 CCPA at p. 10) that the *Simon, Buhler* headnote [3] stating in the affirmative, "A machine is a mechanical contrivance for utilizing, applying, or modifying energy or force, or for the transmission of motion," had again and again been held *not to be a definition of machines* as that term is used in paragraph 372, pointing to the *Goldenblum* carpenters' brace case and the *Guth, Stern* case as examples. We might now well call attention also to

---

[3] This headnote has perhaps been a prime source of confusion about the significance of the *Simon, Buhler* case, as headnotes often are.

the following from the opinion in *United States* v. *Race Co.*, 22 CCPA 327, T.D. 47362, at page 330:

Judge Smith, in speaking for the court in the *Simon, Buhler & Baumann* case, *supra*, was not attempting to lay down a hard and fast definition for the word "machine", as a result of which every article that utilized, applied, or modified energy or force, or transmitted motion, must be classified as a machine. In addition to this it must be "a mechanical contrivance". What is or is not such a mechanical contrivance depends upon the facts in each case.

Notwithstanding the attempt made to show by the testimony of a professor of mechanical engineering that zippers involved a "fundamental type of machine operation" which was "an application or modification of force or energy" (as though that would establish it as a "machine"), this court decided that zippers, by common meaning, are not "machines."

We have now finished our consideration of all of the appealed cases, to the total number of five, referred to in the briefs of the parties. Appellee, seeking to sustain the "machine" classification, merely refers us to the *Simon, Buhler* and *Guth* cases for "the definition of a machine." We have pointed out that they contain no decisive definition. There are, however, many other decisions in this court dealing with the question and we have carefully reviewed fourteen of them.

The situation which exists today with respect to a "question of law" presented to us by the Government, as to the meaning of "machines" in paragraph 372, appears to be very much what it was in 1943 when this court said, in *United States* v. *J.E. Bernard & Co., Inc.*, 30 CCPA 213, C.A.D. 235, at page 219:

Since the decision in the *Simon, Buhler* case, this court has frequently been confronted with very close questions relating to the determination of what constitutes a machine * * * The term "machine" is broadly defined in some authorities and more narrowly defined in others. * * * In view of the kind of machines Congress specifically referred to in paragraph 372, and taking into cognizance the more applicable definitions found in the lexicographical authorities as applied to the term "machine" when referred to in a tariff sense, we think that for an importation to respond to that term it must be something more than a "crowbar," "a pair of pliers," or, as was said in the *Simon, Buhler* case, "a kitchen colander or a box of sand for clearing muddy water." It is our opinion that a machine such as Congress had in mind must have some movable parts, and it must do some of the things pointed out in the *Simon, Buhler* case. We have so held in decisions hereinafter referred to.

For economy of time and space, reference is made to the rest of the above *J. E. Bernard* opinion for citations to the prior cases referred to wherein the court had decided that the following were "machines": aneroid barometers, radio receiving sets, dental operating pump chairs, and, by dictum, grist mills and windmills. And the following had been held not to be machines: a torsion meter for ship's propeller shafts, complex regulating valves for steam and liquid, a mannikin figure of "Mr. Jiggs" with some mechanism, and metal filter assem-

blies. In the *Bernard* case electrical instruments known as field balances were held to be machines.

In the same volume is to be found *United States* v. *Associated Mfg. Co.*, 30 CCPA 236, C.A.D. 238, holding that the lower court erred in sustaining a protest that tricycles are machines and we contrast that with another case, *United States* v. *Laing Harrar & Chamberlin*, 21 CCPA 235, T.D. 46763, holding that shoe-treeing or stretching devices for use in retail stores are machines.

The state of the case law leads us to but one conclusion. ▉ While many items have been held to be, or not to be, "machines," there is no "judicial determination" of what a machine is. It remains simply a question of common meaning and each case must be decided on the basis of its own facts, technical and legislative.

In the present case the merchandise goes by the name of paper punching machines. It falls within the median definitions of "machine" to be found in dictionaries so that one need not apply an extreme definition to include these punches in the term. For example, the definition from Webster's New International Dictionary, referred to in the *Laing* case, supra, at p. 238 and the *Guth* case, supra, at p. 248, defines "machine" briefly as follows:

Any device consisting of two or more resistant, relatively constrained parts, which, by a certain predetermined intermotion, may serve to transmit and modify force and motion so as to produce some given effect or to do some desired kind of work; * * *.

The same appears in the latest (1956) edition.[4]

---

[4] We add to the legal literature in this field the following definition, not previously noted in the opinions, from Hawkins' Mechanical Dictionary, published in 1909 by Theo. Audel & Co., New York:

*Machine.*—The word is most commonly applied to such pieces of mechanism as are used in the industrial arts, for mechanically shaping, dressing, and combining materials for various purposes; machines are frequently named from their use; as, screw cutting machines, or from the thing made or acted upon; as, machine ruler; compound machines are formed from two or more *simple machines*. *Tools* are the simplest implements of art; these when they become complicated in their structure become machines, and machines when they act with great power, take the name, generally speaking, of *engines*.

Cf. Van Nostrand's Scientific Encyclopedia, 1938, wherein the definition of "machines" begins thus:

The term machine applies traditionally in physics to any one of those simple devices—lever, inclined plane, etc.—which might with greater propriety be called "elements of mechanism."

The Columbia Encyclopedia, 2d Ed., in the course of a discussion of over a column in length, says:

A machine is, on this basis, any device, simple or complex, by which the intensity of an applied force is increased, its direction changed, or one form of motion or energy changed into another form. Therefore, such simple contrivances as the LEVER, the PULLEY, the INCLINED PLANE, the SCREW, and the WHEEL AND AXLE are machines. These are classed as simple machines, the five being grouped together by engineers as the mechanical powers or the fundamentally simple machines, of which all the more complicated machines are merely combinations.

Against the background of these definitions the phrase "rise to the dignity of a machine" becomes meaningless. It would be more apt applied to the great dignity of simplicity, as for example in the lever, than to the foolish complexity of the "Rube Goldberg."

Furthermore, and as an additional reason for our decision, we think the paper punching machines at bar are very like stapling machines in their nature and use, punching holes in paper, as a hand operation, as compared to similarly inserting staples in paper. Stapling machines were held, in *T. D. Downing & Co.* v. *United States*, 52 Treas. Dec. 560, Abstract 3762, to be dutiable as "machines" under the corresponding paragraph of the Tariff Act of 1922. Congress knew of that decision, through the Summary of Tariff Information—1929, when it passed the 1930 Act and retained the provision substantially unchanged. We think this at least shows approval of the classification as "machines" of devices quite similar to those at bar.

The judgment of the Customs Court is *affirmed*.